People of the State of Illinois, Appellee, v. Luis Quintana, Appellant.

Gen. No. 52,060.

First District, Third Division.

January 4, 1968.

Julius Lucius Echeles, and Jo Anne F. Wolfson, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Daniel W. Weil, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

In a nonjury trial Luis Quintana was found guilty of possessing marijuana and was sentenced to the penitentiary for a term of five years to five years and one day.

The defendant's motion to suppress the evidence was denied and he urges that this was error. He further contends that there was insufficient proof that he possessed marijuana and that he was sentenced under the wrong statute. It is unnecessary to consider his first and third points because we are not satisfied that his guilt was proved beyond a reasonable doubt.

Quintana was arrested about 9:30 p. m. on the night of April 17, 1965. According to the testimony of the arresting officer he was driving north on a Chicago street when he saw Quintana walk westbound across the street in front of him. He knew Quintana and Quintana knew him. He slowed down when he saw Quintana and Quintana looked at him. He stopped his car and as he did so Quintana, who had almost reached the west curb, bent over and threw two packages underneath an auto which was parked on the west side of the street. The packages which he observed in the palm of Quintana's hand from a distance of 20 feet were of the size and shape commonly used to contain marijuana. He stopped his car and Quintana ran a few feet. He called him by name and, after bringing him to his car, retrieved the packages which he recognized as the ones Quintana threw under the auto. Quintana denied that the packages were his. There were five or six other men near the parked auto but the officer did not question them or take their names.

Quintana testified that he saw the officer driving by as he crossed the street to join some acquaintances who were

96

standing together on the west side of the street. The officer reversed his car, backed up until he was opposite the group of men, left his car in the middle of the street and approached the defendant. The defendant stood his ground and was seized by the arm and placed in the officer's car. He said that the officer then talked to and searched the men who were standing next to the parked auto and looked around the area with a flashlight. He came back to the car with two packages in his hand and said, "Now I have got you." Quintana said he knew nothing about the packages and the officer asked who threw them away if he did not. When Quintana answered that he did not know, the officer said: "Well, now you are going to tell me. You are going to be an informer for me or I will put it on you."

We are skeptical about the story told by the police officer and our skepticism stems from the prior relationship between the officer and the defendant, from a comment made by the trial judge and from the testimony of the chemist of the Police Department's crime laboratory. The chemist testified that the packages contained marijuana, but, in contradiction to the officer, he testified that the packages were "not the general run of packaging." Although the trial judge stated at the conclusion of the trial that he was convinced that Quintana was in possession of the two packages, he was not so convinced at the end of the hearing on the defendant's motion to suppress the evidence. At that time the judge expressed doubt about the officer's veracity. He doubted that the officer from his position in the auto could make out that the packages which he allegedly saw in Quintana's hand were "2 by 3 inches or the type customarily used by sellers of marijuana."

The evidence disclosed that Quintana and the officer had known each other for four months. The officer had been told that Quintana was selling marijuana and during these four months he stopped him on the street several

times and searched him on each occasion. Quintana testified that this happened seven or eight times. The officer admitted that he stopped the defendant five times and that he "shook him down" each time. The arrests were without warrant, were not based on probable cause or even on suspicious conduct, current rumor or intuition; the searches were not incident to lawful arrests, were unreasonable and unlawful. Both were a high-handed display of police power which completely disregarded the defendant's constitutional rights.

The purpose of this harassment was the officer's determination to get something on Quintana and to pressure him into becoming the officer's personal informer. The officer was a law unto himself as he pursued his personal vendetta. On one occasion he arrested Quintana for possession of narcotics but the prosecution was dropped. On another, he put him into his car and drove him around while he insisted that he become a police spy. On the night of his arrest Quintana said the officer drove him around for three-quarters of an hour threatening to prosecute him if he did not accede to the officer's request and promising to release him if he did. As on all the other occasions Quintana refused, protesting that he neither used nor sold narcotics and knew no one upon whom to inform. After their arrival at the police station the officer again endeavored to enlist his services and it was only after Quintana's repeated refusal that a charge was placed against him. The officer acknowledged that each time he stopped Quintana he importuned him to be an informer and had done so again on the night of his arrest.

██ ██ A defendant may be found guilty on the uncorroborated testimony of one witness if the witness is credible and his testimony positive. People v. Guido, 25 Ill2d 204, 184 NE2d 858 (1962); People v. McIntosh, 82 Ill App2d 90, 227 NE2d 76 (1967); People v. Davis, 70 Ill App2d 419, 218 NE2d 3 (1966). The credibility of the witnesses in a case tried without a jury is for the trial

judge to determine but his finding, although entitled to great weight, is not conclusive; a reviewing court will reverse a conviction if the evidence is so unsatisfactory as to raise a reasonable doubt of the defendant's guilt. People v. Pellegrino, 30 Ill2d 331, 196 NE2d 670 (1964); People v. Pendleton, 75 Ill App2d 314, 221 NE2d 112 (1966); People v. Cooper, 69 Ill App2d 18, 216 NE2d 168 (1966).

█ We do not know whether the defendant is or is not a user of marijuana or is engaged in its sale, but we do know that in this case the testimony of the police officer is suspect and that his uncorroborated testimony is insufficient to prove the defendant guilty beyond a reasonable doubt.

The judgment of the Criminal Court will be reversed.

Reversed.

SCHWARTZ and SULLIVAN, JJ., concur.