People of the State of Illinois, Plaintiff-Appellee, v. Richard J. Bellecourt (True Name, Ronald John Bellecourt), Defendant-Appellant.

Gen. No. 53,297.

First District, Third Division.

June 18, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James N. Gramenos, Assistant Public Defender, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Paul P. Biebel, Jr., Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

In a trial without a jury the defendant was convicted of the sale of a narcotic drug in violation of the statute (Ill Rev Stats, c 38, § 22–3 (1969)). After a hearing in aggravation and mitigation, the court imposed a sentence of ten years to ten years and one day in the Illinois State Penitentiary. We have concluded that the State failed to prove guilt beyond a reasonable doubt and there is no need to consider another point made by the defendant questioning the propriety of the jury waiver. A summary of the evidence follows.

On January 17, 1968, the defendant was arrested for the unlawful sale of marijuana. The State's principal witness was John Peoples, the arresting police officer. He testified that on January 15, 1968, he was working as an undercover narcotics agent and was sitting in the B–29 Tavern on North Clark Street in Chicago. From that point on, his testimony given at the trial conflicts both with his testimony before the Grand Jury and with a police report which, although typed by another officer, was prepared on the basis of information supplied by Peoples.

On the trial Peoples testified that the defendant, who said his name was Rich, approached him while he was in the tavern. That statement is consistent with the police report which was filed, but is in direct conflict with Peoples' testimony before the Grand Jury. The version he gave the Grand Jury was that upon overhearing a conversation about marijuana, he approached the defendant and started to talk to him.

A second contradiction in Peoples' testimony relates to his testimony at the trial that after he told the defendant he was interested in making a ten-dollar purchase, defendant left the table to converse with a man at the rear of the tavern. Before the Grand Jury however, Peoples testified that it was not until after defendant returned from the conversation with the other

366

man that the price of ten dollars was discussed. Still another account by Peoples of that phase of the transaction appears in the police report. There Peoples stated that he gave Rich, the defendant, ten dollars before Rich left to talk to the man at the back of the tavern. Peoples testified at the trial that the police report was correct, except that he received the tinfoil packet before he paid the defendant any money.

A third discrepancy relates to Peoples' testimony that when the defendant returned to the table, he asked Peoples to follow him into the bathroom and that while they were alone, defendant handed him a tinfoil packet and was given the ten dollar bill. Before the Grand Jury Peoples testified that he gave the money to the defendant when he returned to the table after his conversation with the man at the rear of the tavern and that they then went to the back of the tavern, where defendant gave him a brown envelope containing crushed green plant. The police report states that after he was given ten dollars at the table, the defendant left to talk with the other man and upon returning, gave Peoples a tinfoil packet.

Police Officer Bernard Brown testified that he typed the police report as the facts were related to him by Peoples. He also testified that he received a tinfoil packet from Peoples on the night of January 15, 1968, which he initialed and sent to the Police Crime Laboratory. The State introduced a tinfoil packet bearing Officer Brown's initials. It was stipulated that it contained 6.5 grams of marijuana.

The defendant testified in his own behalf. He stated that he was 24 years old and had no prior arrests. He first saw Officer Peoples on January 17, 1968. On that date Peoples, dressed in plain clothes, entered the B–29 Tavern and asked defendant to step outside. When they were outside, Peoples showed his badge and told

367

defendant to get into a car. The defendant testified that Peoples asked him to cooperate in apprehending persons who traffic in narcotics in the Clark Street area. When defendant denied knowledge of such activity, he was taken to Police Headquarters where Peoples informed him that he was under arrest. Defendant denied ever having sold marijuana. He also denied that his name was Rich or that any one ever called him Rich. He gave his name as Ronald John Bellecourt.

██ The conflicts in the testimony of the State's principal witness as to who initiated the conversation about marijuana, whether the sale took place at the table or at the rear of the tavern or in the bathroom, whether the money was paid before or after receiving the marijuana and whether Peoples received a tinfoil packet or a brown envelope in exchange for the ten dollars create a reasonable doubt as to the defendant's guilt.

██ In People v. Quintana, 91 Ill App2d 95, 234 NE 2d 406, this court reversed a conviction for possession of narcotics which was based exclusively on the unconvincing testimony of the arresting police officer. The court said (p 99):

> "We do not know whether the defendant is or is not a user of marijuana or is engaged in its sale, but we do know that in this case the testimony of the police officer is suspect and that his uncorroborated testimony is insufficient to prove the defendant guilty beyond a reasonable doubt."

We have reached the same conclusion in the case before us. The State has failed to prove the guilt of the defendant beyond a reasonable doubt and his conviction is accordingly reversed.

Judgment reversed.

DEMPSEY, P. J. and McNAMARA, J., concur.