THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES E. GARNER, Defendant-Appellant.

(No. 58893; ▮▮▮▮▮▮▮▮▮

First District (5th Division)—May 3, 1974.

Jacob J. Gordon, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Linda West Conley, Assistant State's Attorneys, and Nicholas P. Iavarone, Senior Law Student, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant was charged with two counts of burglary (Ill. Rev. Stat. 1971, ch. 38, par. 19—1), one count of armed robbery (Ill. Rev. Stat. 1971, ch. 38, par. 18—2), two counts of deviate sexual assault (Ill. Rev. Stat. 1971, ch. 38, par. 11—3), two counts of indecent liberties with a minor (Ill. Rev. Stat. 1971, ch. 38, par. 11—4), and two counts of contributing to the sexual delinquency of a child (Ill. Rev. Stat. 1971, ch. 38, par. 11—5). Following a bench trial he was convicted on one count of burglary, acquitted on all other charges, and sentenced to 4 to 12 years. On appeal he contends: (1) the verdict is inconsistent and not supported by evidence sufficient to establish his conviction beyond a reasonable doubt; and (2) it was error to exclude the results of a polygraph test administered by the Chicago police department.

The following evidence pertinent to this appeal was adduced.

*Franklin Jones, for the State*:

He is 15 years old. He has resided with his mother, brother and two sisters on the second floor of a six-unit apartment building at 949 Win-

ona Avenue since February, 1972. On the evening of May 12, 1972, he was cleaning his aquarium in the living room. His brother and two sisters were sleeping in their bedrooms and his mother was asleep on the living room couch. Shortly before midnight while passing through the kitchen, he was confronted by defendant who beckoned him with a small pistol and commanded him to fetch his mother's purse which lay next to her on the floor. After he retrieved the purse, defendant ordered him to go into his bedroom and shut the door. He walked around his room for about 2 minutes. He had assumed defendant had left when there was a light knock on his bedroom door. Defendant entered and held a pistol to his head forcing him to commit oral copulation and anal intercourse. While being subjected to anal intercourse, he heard the apartment bathroom toilet flush. Defendant arose, peered out the bedroom door and ran out the apartment's back door. His mother appeared at the bedroom door and in response to her question, he related what had occurred. She called the police. While waiting for the police, his mother walked toward the kitchen and reappeared 2 or 3 minutes later with her purse. He underwent a medical examination that night at Weiss Memorial Hospital. He was shown photographs at the police station immediately thereafter, but was unable to identify anyone.

On June 8, 1972, he saw defendant exit the front door of their building, get into an automobile and drive away. He telephoned the police. Investigator Larry Evans and another police officer arrived at his apartment and arrested defendant when he returned to the apartment building.

On cross-examination he admitted that subsequent to defendant's arrest he learned that defendant lived with a roommate directly above his apartment.

There was a stipulation that Franklin's medical examination conducted on May 13, 1972, at approximately 1:30 A.M. revealed no abnormal finding; the rectal area was negative and there was no blood.

*Constance R. Jones, for the State*:

She is Franklin's mother. She is a school teacher and is at work during the day. On the night in question she was asleep on the living room couch when she was awakened by the sound of a door closing. As she started to get up, a Negro man appeared in the entrance way adjacent to the living room, ran toward the kitchen, turned around to face her momentarily and then fled out the back door. She called to her son who came into the living room and related what had occurred. After phoning the police she went into the kitchen and looked out the window. She observed the same Negro man coming up the steps with her

purse. The porch was lighted. He looked up at her when she screamed, he dropped her purse and ran away. She retrieved the purse and found that approximately $150 was missing. She went to the hospital with her son. She was unable to identify anyone from a series of photographs shown to her at the police station later that morning.

On the afternoon of June 8, 1972, while at home with her son Franklin, she observed defendant, recognizing him as the same man she had seen in her apartment on May 12. In response to her summons, Chicago police detective Larry Evans arrived. Evans arrested defendant later that afternoon.

She admitted that she saw defendant with his dog sitting in front of her apartment building sometime in August, 1972; that she approached him with her sister in tow and that she apologized for her sister's behavior in throwing pebbles at his car. No one else was present.

*Allen White, for the State:*

He is a Chicago police officer. On May 13, 1972, at approximately 12:40 A.M. he and Officer Larry Evans responded to Mrs. Jones' burglary call at 949 Winona Avenue. A glass plate from her apartment's back door was missing and a piece of cardboard approximately the same size of the opening was lying on the back porch. Mrs. Jones' purse contained no money. They drove Mrs. Jones and Franklin to Weiss Memorial Hospital where a medical examination of the boy was conducted.

This testimony was corroborated by Evans who additionally testified that on June 8, 1972, he and Chicago police investigator Andrew Martorano drove to Mrs. Jones' apartment in response to her sighting of defendant. They arrested defendant in the hallway of the third floor just outside his apartment at 949 Winona Avenue. Defendant denied all of the crimes charged and voluntarily took a polygraph test.

*James Garner testified in his own behalf:*

He has shared a third-floor apartment at 949 Winona Avenue with Curtis Benson since August, 1971. On the evening of May 12, 1972, he and Benson went shopping, did their laundry and then returned to the apartment where they watched television from 10 P.M. until retiring just after midnight. He knows Franklin and his mother have lived directly below his apartment since February, 1972. Prior to his arrest, he had seen them regularly and exchanged greetings when going in and out of the apartment building to walk his two dogs. He is the only Negro in the building. He denied ever owning a gun or committing any acts charged in his indictment.

He was arrested on the afternoon of June 8 and was taken to the police station where he voluntarily submitted to a polygraph examina-

tion. His counsel's motion to admit the results of the examination into evidence was denied.

In the middle of August, 1972, he was sitting in his car in front of the apartment talking with a neighbor, Judy Wroblewski, when Mrs. Jones leaned into the car and apologized for all of his troubles and stated that she really hadn't seen him on the night of the burglary, but that her son had "and that's good enough for me." After she walked away, her sister, Jeanette Ross, began throwing rocks from an apartment window at his car. She returned a moment later and apologized. He went into Judy's apartment and called the police.

*Judith Wroblewski for the defense*:

She has been close friends with Benson for 8 years and defendant for 2 years, but has not dated either man. She is employed as a dental technician by her father, Dr. Henry Wroblewski. She spent part of the 1972 summer at home recovering from surgery. She substantially corroborated defendant's account of the August, 1972, conversation he had with Mrs. Jones. She had seen Mrs. Jones, but not Franklin, prior to that conversation.

*Curtis Benson for the defense*:

He is defendant's roommate. He supported defendant's alibi for the night of May 12, 1972. He had also seen Mrs. Jones in the hallway of the apartment on occasions prior to this incident.

*James Smith, for the defense*:

He is the building engineer of two twin six-flat units at 947-949 Winona Avenue. He had seen defendant walk his dogs regularly during the day, but he had never seen defendant fraternizing with Mrs. Jones or Franklin. He also testified that Mrs. Jones and Franklin were not at home most of the day.

*Abraham Truman, for the defense*:

He is a friend of defendant, and now lives in the same neighborhood. They see each other at least once a week. Although he does not personally know Franklin, he and defendant have on occasion seen the boy while they were walking in the neighborhood. He has never seen defendant fraternizing with Franklin or his mother.

OPINION

Defendant contends that the trial judge rendered an inconsistent verdict thus demonstrating the insufficiency of the evidence. His position is that the finding of not guilty on eight of the nine charges infers that the testimony of the State's witnesses was not believable and that therefore the same witnesses' testimony cannot support a conviction for burglary.

While there is no inconsistency in the verdict here since there are

different elements in each of these offenses and a varied amount of proof was offered for each of the charges (*see People v. Harper*, 50 Ill.2d 296, 278 N.E.2d 771), we nevertheless find that the evidence is so unsatisfactory as to create a reasonable doubt of defendant's guilt. ■■ While the trial judge's finding on the credibility of a witness is entitled to great weight, it is not conclusive and we will reverse a conviction where the evidence is so unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Pellegrino*, 30 Ill.2d 331, 196 N.E.2d 670.) A conviction on evidence that is improbable and contrary to human experience will require us to reverse. *People v. Dawson*, 22 Ill.2d 260, 174 N.E.2d 817.

In the instant case, Franklin Jones testified that after retrieving his mother's purse for the intruder, he went into his bedroom, closed the door and walked around the room. Incredibly, he made no attempt to notify anyone of the crime. There are other additional facts that make his testimony suspect. His charge that he was forced to submit to anal intercourse is not corroborated by the hospital report. Furthermore, his denial of having seen defendant in the nearly 5 months prior to defendant's arrest is somewhat improbable considering that defendant resided in the apartment directly above his, that defendant was the only Negro in the six-unit apartment building, and that defendant walked his two dogs daily and was frequently in and around the apartment.

His mother's testimony suffers from some of the same infirmities. She too, had never seen defendant prior to the arrest date. Additionally, the circumstances of her identification of defendant are peculiar. She saw his face briefly when he ran out of the apartment and then approximately 20 minutes later, she leaned out her kitchen window and saw him returning up the steps with her purse in his hand. It is incredible that defendant would not either return to his third-floor apartment immediately or at least avoid remaining below an apartment he had just burglarized. Perhaps most bewildering is Mrs. Jones' conversation with defendant, after the defendant's arrest. According to her testimony, she approached him to apologize for her sister's behavior in throwing stones at defendant's automobile. This is contrary to a mother's human nature whose son had been sexually assaulted by the same man only 3 months earlier.

■■ The State's evidence is further rebutted by defendant whose own testimony is supported by various witnesses. Defendant's roommate supports defendant's alibi that he had been in the apartment at the time of the burglary and assault. The apartment's janitor, James Smith, confirms defendant's frequent appearances in and around the building. De-

fendant's account of his conversation with Mrs. Jones in August is confirmed by a neighbor, Judith Wroblewski. At this time, Mrs. Jones allegedly admitted not having seen defendant in her apartment. There is also Abraham Truman's corroboration of defendant's testimony that he and defendant had on occasion passed Franklin while walking in the neighborhood prior to defendant's arrest. The record on the whole does not prove defendant's guilt beyond a reasonable doubt.

Having reached this result, it is unnecessary to consider defendant's alternate contention.

Accordingly, the judgment of the circuit court is reversed.

Reversed.

BARRETT and DRUCKER, JJ., concur.