THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LARRY FORD, Defendant-Appellant.

First District (6th Division)   No. 1—89—0061

Opinion filed March 16, 1990.

E. Steven Yonover, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Jane E. Loeb, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a trial without a jury, defendant, Larry Ford, was found guilty of delivery of a controlled substance and was sentenced to a term of four years' imprisonment. Defendant appeals, contending that the police officer's identification testimony lacked credibility and thus the State failed to prove defendant guilty beyond a reasonable doubt.

Officer William Rogers testified that on December 9, 1986, he approached a third-floor apartment in a building in Chicago. He observed defendant leaving the apartment. Another man, Carl McMahon, called from the apartment door, asking "Larry" if he planned to return. Rogers testified that defendant turned to Rogers and asked if he "was there to buy cocaine." Rogers asked for one bag of cocaine and received a bag of white powder from McMahon after defendant left. In his report, however, Rogers stated that he asked for and received heroin. Rogers corrected his testimony on cross-examination, explaining that he was confused because he had testified about cocaine at two other trials earlier that day. He in fact received a bag of heroin. Rogers testified that defendant instructed McMahon to sell Rogers the bag and departed. Rogers bought $20 worth, and then joined the surveillance team, Officers Cronin and Drodz. In his initial report, Rogers identified defendant as being 38 years old, 5 feet 9 inches tall, 165 pounds, with brown eyes and black hair, and having a thick mustache and a medium complexion. He wore a waist-length dark coat and dark pants. Rogers testified he knew defendant's name

because the "surveillance officer had his name from the information, and then from there, what is known as an 'IR' number was obtained and a photo." Within one week of observing defendant, Rogers identified defendant's photograph at the police station.

In December 1987, defendant was arrested. He was not arrested earlier in order to protect Rogers' undercover status until the conclusion of the particular narcotics investigation in which he was involved. If defendant and McMahon were arrested at the time the drugs were purchased, the "on-going investigation would end at that point, it would not be a continuing investigation." Several days after Rogers observed defendant, however, McMahon was arrested by Cronin and Drodz at the apartment in question during a narcotics raid. Rogers did not participate in order to protect his undercover status.

Constance Briel, a forensic chemist expert for the police department, testified that the package inventoried by Rogers contained .29 grams of heroin.

Defendant testified that in December 1986, he was 31 years old, 5 feet 7 inches tall, weighed 140 pounds, and had a mustache. His face was severely scarred on the left side, and he wore a bandage and nylon skull cap to cover the scars. In the winter, he wore a winter coat. He denied being at the apartment in question on December 9, 1986, and denied having ever seen Rogers. He knew people in that building, knew the McMahon family, and lived one block from the apartment building. He had lived in the area all his life. Defendant knew Cronin and Drodz from a 1973 arrest.

Office Cronin testified for the defense that, at a grand jury hearing, he stated that on December 6, 1986, Rogers returned to the surveillance team and reported that he knocked on the door, McMahon answered, and Rogers bought the heroin. Cronin testified at trial, however, that he did not believe Rogers had reported knocking at the door.

■■■ Defendant contends that he was not proved guilty beyond a reasonable doubt. In a bench trial, it is for the trial court to determine the witnesses' credibility, weigh the evidence and draw reasonable inferences therefrom, and resolve any conflicts in the evidence. While a single witness' identification of the accused is sufficient to sustain a conviction, an identification will not be deemed sufficient if it is vague or doubtful. (*People v. Ash* (1984), 102 Ill. 2d 485, 468 N.E.2d 1153.) The trial court's judgment will not be set aside on review unless the evidence is so unsatisfactory, improbable or implausible as to raise a reasonable doubt as to defendant's guilt. *People v. Johnson* (1986), 114 Ill. 2d 170, 499 N.E.2d 1355; *People v. Berland*

(1978), 74 Ill. 2d 286, 385 N.E.2d 649.

■■ ■ In *People v. Slim* (1989), 127 Ill. 2d 302, 537 N.E.2d 317, our supreme court set forth five factors used for evaluation of identification evidence, as announced in *Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375.

The first factor is the opportunity the witness had to view the criminal at the time of the crime. Rogers had sufficient opportunity, in the third-floor apartment building hallway, to view defendant at the time of the crime.

The second factor is the witness' degree of attention. Here, the trier of fact could reasonably assume Rogers' degree of attention was high due to the fact that he was an undercover police officer buying narcotics.

The third factor is the accuracy of the witness' prior description of the criminal. Defendant's main complaint regarding the accuracy of the witness' prior description is Rogers' failure to note defendant's scarring on the left side of his face. Defendant testified that he was in a car accident in 1982 and it resulted in severe scarring on the entire left side of his face and body. As a result, ever since the accident, including December 1986, he has worn a bandage on the left side of his face and a nylon skull cap. It is difficult to imagine how Rogers could miss seeing the scarring or bandage. This is not a case, for example, involving the omission of a minute scar. See, *e.g.*, *People v. Nims* (1986), 156 Ill. App. 3d 115, 505 N.E.2d 670.

The trial court stated that defendant testified he attempted to conceal the scarring, and that he apparently had been successful. However, the police report fails even to mention the skull cap and bandage covering the side of his face. Moreover, the court's comment that "maybe he was wearing a big hat" has absolutely no basis in the evidence. The court itself noted that defendant testified he "ha[d] always worn" the skull cap.

Considered along with the failure to mention the severe scarring are the discrepancies in the remainder of the description. Rogers reported that defendant was a male black, 38 years old, 5 feet 9 inches tall, 165 pounds, with brown eyes, black hair, a thick mustache and a medium complexion. Defendant was 31 years old, 5 feet 7 inches tall, 140 pounds, with dark hair and a mustache. While the height and weight difference would carry little weight standing alone, we believe it must be given some weight in light of the other identification problems. Rogers described only a waist-length dark coat and dark pants, which certainly is not distinctive, and thus offers little corroboration that it was defendant whom Rogers saw. In addition, the photograph

Rogers purportedly identified one week after the drug purchase was never introduced into evidence, and thus it is impossible to know whether it was of defendant, or was an accurate depiction of defendant in December 1986, or matched Rogers' description of the man he observed.

The fourth factor used to assess identification testimony is the level of certainty demonstrated by the witness at the identification confrontation. The identifying witness here, a veteran police officer, expressed certainty and demonstrated no doubts when he made the identification of defendant at trial. There is no way of knowing, however, if he expressed the same certainty when he described the man he saw with McMahon to Cronin and Drodz, who knew defendant, or when he purportedly identified defendant's photograph a week after the drug purchase. There is no police report even mentioning defendant's name. Neither Rogers nor Cronin offered more than the sketchiest of information regarding how defendant's name was ever identified. Rogers simply said that "[t]he surveillance officer had his name from the information, and then from there, what is known as an 'IR' number was obtained and a photo."

The fifth factor is the length of time between the crime and the identification confrontation. Here, the trial court relied on the fact that only a week passed between the time Rogers observed defendant and identified his photograph. The record contains no clear information about how that identification came about, and there is nothing to that effect in the police report. In fact, it was over a year before defendant was arrested. Rogers explained at trial that he was working undercover, and arrests were not made at the time an accused was identified. Instead, the arrest was delayed until the conclusion of the investigation. This explanation makes no sense. McMahon was arrested three days after Rogers bought the heroin. The State merely offered the explanation that McMahon was present during the December 12, 1986, drug raid, while defendant was not present. This fails to explain how Rogers' undercover identity was protected by delaying defendant's arrest, but not delaying McMahon's arrest or the drug raid of the apartment in question. Because neither defendant's name nor the photo identification was ever included in any written report, it was not until a year later that anything written even mentioned that defendant had been involved in the December 9, 1986, incident.

Rogers' credibility suffers for several other reasons, when all the factors are viewed together. Rogers testified throughout direct examination with no effort by the State to correct him, that he asked for cocaine from defendant and received a bag of white powder. It was

not until cross-examination, when confronted with his police report which stated he bought heroin, that Rogers agreed it had been heroin, not cocaine. While Rogers explained that he was testifying that day in two other trials involving cocaine, the discrepancy added to the undermining of his credibility.

Moreover, there was some discrepancy between Rogers' testimony at trial and Officer Cronin's testimony before a grand jury, when he said Rogers reported that McMahon answered when Rogers knocked on the apartment door. At trial, Rogers testified that when he arrived at the apartment, McMahon was already standing at the door with defendant, who was leaving the apartment and who approached Rogers and asked if he was going to buy drugs. Rogers testified at trial that Cronin's grand jury testimony was wrong. Cronin testified at trial that he had in fact given that answer to the grand jury.

Defendant also correctly points out that no one else saw him near the apartment building on that day, although Cronin observed Rogers entering and exiting the building, and that Rogers testified that the apartment faced west while his police report stated it faced east.

We would not reverse the conviction based on any single factor discussed here. However, when all the weaknesses and discrepancies are viewed together, the identification testimony suffers enough that we must conclude it is vague and doubtful. Consequently, we hold that the identification proof was so unsatisfactory, improbable and implausible as to justify a reasonable doubt as to defendant's guilt.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

LaPORTA, P.J., and EGAN, J., concur.