THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LUTHER C. JONES, JR., Defendant-Appellant.

Third District   No. 3—90—0238

Opinion filed June 27, 1991.—Rehearing denied August 13, 1991.

Charles K. Piet, of Chicago, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Jay P. Hoffman, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:
Defendant, Luther C. Jones, Jr., was charged with unlawful possession with intent to deliver more than 15 grams of a substance containing cocaine. He was found guilty after a bench trial of the lesser offense of possession with intent to deliver between 1 and 15 grams of a substance containing cocaine. Defendant was subsequently sentenced to serve an extended term of 30 years in prison. In this appeal, defendant raises four issues: (1) whether the State's evidence was sufficient on the question of defendant's intent to deliver; (2) whether the State's evidence was sufficient on the question of defendant's possession; (3) whether defendant was denied his right to a speedy trial; and (4) whether the court erroneously denied defendant's motion to quash his arrest. We affirm.

The State's evidence established that on November 12, 1988, Officer Mike Johnson of the Peoria police department radioed that he was arresting Clarence Sanders in the Warner Homes area on suspicion of drug trafficking. Officers Marshall Dunnigan and Craig Hightower were working the area on foot at the time and heard Johnson's broadcast. When they reached Johnson, Dunnigan noticed two black men acting in a suspicious manner near the corner of one of the buildings.

Dunnigan walked toward the men. They ducked inside and began pounding on doors demanding to be let in. Their requests went unheeded, and they proceeded up the stairs to the third level, where Dunnigan observed them stop at a window in the hallway and throw out several small plastic packets. From his point of observation, Dunnigan also saw defendant dropping a larger bag. Dunnigan ran up to them and ordered them to stop. He grabbed them both, but they broke and ran as Dunnigan loosened his grip on one to retrieve his radio to call for back-up.

Dunnigan went back downstairs and picked up 15 small packets and a larger baggie containing more of the packets that he found on the ground below the window from which defendant and his partner had thrown them. With help from back-up officers, defendant and co-defendant Michael Jones were apprehended and taken to the police station for booking. Defendant volunteered that he lived in Chicago and had just driven from Oakland, California, to Peoria. The material in the small packets field-tested positive for cocaine and the two defendants were charged as aforesaid.

Defendant was taken to the Peoria County jail, where Officer Leanne Kruse inventoried defendant's property before placing him in a cell. Defendant had six cents in his pocket and $1,000 in his underwear. The money was counted, placed in an envelope and transported back to the city police station for safekeeping in a property locker, but all or part of it had disappeared by the time defendant was tried in November 1989.

At trial, in addition to the testimony of the officers, the State introduced forensic testimony to establish that of the 50 small packets found in the larger bag, 49 tested positive for cocaine. The cocaine in those 49 packets weighed 14.7 grams. The material in each of the 15 small packets tested positive for cocaine and weighed 4.8 grams. Expert testimony further established that the small packets, each containing approximately one-quarter gram of cocaine, are called "quarter bags" and sell on the street for about $25 apiece. The witness testified that they are usually purchased by users one bag at a time. After the State's case in chief, the defense rested without presenting any evidence.

The trial court ruled that the State had failed to prove defendant's actual possession of or accountability for the 15 small packets. According to the court, defendant's possession had been established only with respect to the larger bag. Therefore, since the material in the larger bag weighed 14.7 grams, defendant could not be convicted of the Class X offense as charged. The court found defendant guilty,

as aforesaid, of the lesser-included Class 1 felony offense based on a quantity of cocaine weighing less than 15 grams.

We first address defendant's argument that the State's evidence failed to prove his knowing possession of the bag containing the 50 small packets of cocaine. Defendant suggests that he may have been merely helping Michael Jones dispose of material over which defendant had never previously exercised dominion or control.

■ As the State correctly responds, defendant's theory of innocence need not have been accepted by the trial court, and on review, it is not our job to second-guess the trier of fact, but to determine whether any reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) Based on the appropriate standard, we do not hesitate to affirm the trial court's conclusion that the element of possession with respect to the bag containing 14.7 grams of cocaine was proved. Officer Dunnigan testified unequivocally that he saw defendant throw the larger bag out of the window after he and codefendant Michael Jones tossed out several smaller packets. The circumstances leading up to their attempts to discard the drugs—*i.e.*, running away from the approaching officer and trying to gain entry into apartments in an apparently random manner—evinced defendant's knowledge of wrongdoing. A rational trier of fact could well infer from these circumstances that defendant had knowledgeable possession of the larger bag of drugs, as well as the actual possession witnessed by Officer Dunnigan, prior to tossing the bag out the window. See *People v. Griffin* (1974), 18 Ill. App. 3d 873, 310 N.E.2d 746 (conviction for possession of heroin in cigarette package discarded by defendant sustained upon challenge to knowledgeable possession); *People v. Coleman* (1980), 91 Ill. App. 3d 646, 415 N.E.2d 553 (defendant's conviction for possession of package of marijuana discarded by defendant through bedroom window sustained on defendant's challenge based on conflicts in testimony as to defendant's residence).

■ Defendant next argues that, since there was no evidence that he had made any deliveries of cocaine, the State's proof of intent to deliver is insufficient. The law of Illinois supports the State's position to the contrary. A reasonable inference of intent to deliver arises from possession of a quantity of drugs greater than that which might be used for personal consumption. (*People v. Romero* (1989), 189 Ill. App. 3d 749, 546 N.E.2d 7, 11, citing *People v. Schaefer* (1985), 133 Ill. App. 3d 697, 479 N.E.2d 428.) The inference may be enhanced by

factors such as how the drugs are packaged and defendant's possession of large amounts of cash.

█ In this case, expert testimony established that the larger bag contained 50 individual portions of cocaine and that a user generally purchased them singly for $25 apiece. According to the expert witness, the cocaine in this case was packaged for street sale rather than for direct consumption. Defendant was arrested in an area of Peoria where street sales were common. The inference of intent to deliver arising in this case is further enhanced by defendant's hidden cache of $1,000 in currency. And, defendant's theory that he may have been a user only is further eroded by the fact that it is unlikely that a Chicago resident would travel to Oakland, California, or Peoria to obtain drugs for his own use. We find under the circumstances that the evidence of defendant's intent to deliver was sufficient to sustain the court's finding of guilt beyond a reasonable doubt.

█ Next, we reject defendant's argument that the court erred in denying defendant's motion to quash his arrest. Defendant argues that Officer Dunnigan conducted a stop without specific and articulable facts sufficient to warrant an investigative intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) In fact, Officer Dunnigan did nothing to restrain defendant's liberty until after he had probable cause to arrest. Dunnigan merely walked in the direction of defendant and continued to follow him inside the building. There is no evidence that Dunnigan even spoke to defendant or his companion or indicated that he wanted to speak to them until Dunnigan saw them throwing the cocaine out the window. At that point, Dunnigan had probable cause to arrest and did so. Accordingly, we hold that the trial court did not err in denying defendant's motion to quash.

█ Lastly, we find that defendant failed to establish his right to a discharge based on a speedy trial violation. Pursuant to statute, a defendant in custody is entitled to be tried within 120 days or discharged unless delay beyond the prescribed period is occasioned by the defendant. (Ill. Rev. Stat. 1989, ch. 38, par. 103—5(a).) In this case defendant was arrested and placed in custody on November 12, 1988. He posted bond and was released on November 15, but failed to appear in court for arraignment and was rearrested on June 3, 1989. Defendant remained in custody until the date he was to be tried on November 13, 1989. Thus, he was in custody a total of 166 days.

Defendant agrees that the 27-day delay between August 2 and August 29 was chargeable to him because of defendant's request for a fitness examination. The State agrees that the three-day period before

defendant posted bond and the 60-day delay between the date he was rearrested and the date defendant requested a fitness examination are both chargeable to the State. In question is the 76-day period between following the fitness examination and the date set for trial. The trial court ruled that the entire 76-day period was occasioned by defendant.

The record discloses that defendant was disruptive of court proceedings and in jeopardy of being held in contempt for his continual religious incantations and interruptions of the judge on August 29. Defense counsel asked for a trial date at that time, and the court set it for November 13 with no objection from the defense.

We find the circumstances here virtually identical to those presented in *People v. Cabrera* (1989), 188 Ill. App. 3d 369, 544 N.E.2d 439. In *Cabrera*, as here, defendant caused delay by requesting a fitness examination. When the psychiatrist's report was filed with the court, defendant there, as here, moved for a trial date. The trial was set in the regular course of the court's docket for a date 35 days later. The issue on appeal was whether the 35-day delay was attributable to the State or the defense. The court prefaced its analysis with a review of applicable law:

> "On a motion for discharge, the defendant bears the burden of proving that he was not responsible for the delays prior to trial. (*People v. Grant* (1982), 104 Ill. App. 3d 183, 432 N.E.2d 1129.) A delay is considered to have been occasioned by the defendant if his acts have caused or contributed to the delay or where he has expressly agreed to a continuance on the record. (*People v. DeCarlis* (1980), 88 Ill. App. 3d 634, 410 N.E.2d 677.) When a defendant files a pretrial motion, he is responsible for the time naturally associated with processing the motion. (*DeCarlis*, 88 Ill. App. 3d at 637, 410 N.E.2d at 680.) The trial court's decision as to the accountability for delay will be sustained on appeal absent a clear showing of abuse of discretion. *People v. Sonntag* (1984), 128 Ill. App. 3d 548, 470 N.E.2d 631." (188 Ill. App. 3d at 371, 544 N.E.2d at 440.)

The court then noted that defendant's motion for a psychiatric examination and uncertainty as to the timing or the outcome of the evaluation made it impossible to set a trial date prior to the filing of the psychiatrist's report. When defense counsel asked for a date, he agreed to setting the trial in the regular course of the court's docket and did not object to the 35-day delay. Under these circumstances, the court on review ruled that defendant had "contributed to and acquiesced in the delay in his trial. Accordingly, *** the trial court did not

abuse its discretion in attributing the [35-day] period *** to the defendant and *** denying his motion to discharge." 188 Ill. App. 3d at 371-72, 544 N.E.2d at 440.

In this case defendant argues that, notwithstanding the delay caused by defendant's fitness evaluation, the State was responsible for bringing him to trial within the statutory period. In so arguing, defendant purports to shift the burden to the State to prove that it was not responsible for the 76-day delay. As recited above, however, it is defendant's burden to establish his right to a discharge, and deference will be given to the trial court's assessment as to who is chargeable with delay. In denying defendant's motion here, the court noted that defendant's conduct throughout the period prior to his re-arrest in June 1989 had undermined the orderly proceeding of his cause. Besides defendant's disruptions in court, defendant had jumped bail, he had discharged his attorney, and he had obstructed the psychiatrist's efforts to evaluate him. The record does not disclose that on August 29, 1989, a trial date earlier than November 13 was available for the court or counsel. Lacking any indication to the contrary, we assume that November 13 was the earliest date available on the court's docket. Under the circumstances, even though defendant did not directly cause a delay in his trial date after August 29, we find that the court did not abuse its discretion in finding that defendant contributed to or acquiesced in the delay after receipt of the fitness evaluation and before defendant's trial could be set to begin. Accordingly, we hold that the trial court did not err in denying defendant's motion for discharge.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

STOUDER, P.J., and SLATER, J., concur.