THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT BONSLATER, Defendant-Appellant.

First District (1st Division)    No. 1—92—1156

Opinion filed February 28, 1994.—Rehearing denied April 21, 1994.—Modified opinion filed
May 2, 1994.

Michael J. Pelletier and Nan Ellen Foley, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Katherine S.W. Schweit, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a bench trial, defendant Robert Bonslater was convicted of possession with the intent to deliver more than 15 but less than 100 grams of a controlled substance containing cocaine. The trial judge sentenced defendant to six years' imprisonment in the Illinois Department of Corrections. On appeal, defendant contends: (1) that the State failed to prove beyond a reasonable doubt that he possessed a controlled substance with the intent to deliver where the officer's version of the surrounding circumstances was so improbable and unsatisfactory that no rational trier of fact could have convicted him; and (2) that he was denied the effective assistance of counsel where his attorney failed to move to suppress evidence, failed to make an opening statement, failed to cross-examine the State's only witness, failed to move for a directed finding, failed to present any defense witnesses and made a closing argument which was refuted by the court reporter's notes and which questions counsel's knowledge of the law. For the following reasons, we reverse and remand for a new trial.

Prior to trial, defense counsel did not present any motions to suppress. At the start of trial, both the prosecutor and defense counsel waived opening statements. The prosecutor then called the arresting officer, Akki Mares, as the State's only witness. Mares testified that on the night of February 27, 1987, he and his partner, Officer Malchick, were working with an undercover police tactical unit. Mares stated that at approximately 8:15 p.m., they were one of several tactical teams chasing an armed robbery suspect near Campbell and Milwaukee Avenues. According to Mares, he and his partner had proceeded down Fullerton and were turning southbound onto Campbell when he observed defendant exiting from a stairwell at 2339 North Campbell. Mares testified that defendant "looked in my direction[,] dropped a clear plastic bag and raced up the stairs." Mares asserted that he then "ran out of the car, *** picked up the bag immediately and chased [defendant] into the hallway of the building." Mares stated that the bag contained a "rocky substance"

he believed to be cocaine. He testified that after he arrested defendant, he recovered from defendant's person several bags of a substance which appeared to be cocaine, several bags of a substance which appeared to be marijuana, $1,968, and a portable telephone.

Defense counsel did not cross-examine Officer Mares.

The parties then stipulated that if the police crime lab chemists were called to testify they would state that the substances recovered from defendant consisted of 70.76 grams of cocaine and 7.55 grams of marijuana.

The judge accepted the stipulation and the State rested. The defense also rested without putting on any witnesses.

The State waived its closing argument, but reserved rebuttal. Defense counsel then made his closing argument. Defense counsel first asserted that the State failed to prove defendant guilty beyond a reasonable doubt because Mares "failed to identify defendant in open court." A portion of Mares' testimony was then read back to the court by the reporter. Specifically, the relevant portion of Mares' direct examination proceeded as follows:

"STATE'S ATTORNEY: And you responded northbound on Milwaukee what, if anything, did you do and observe?

OFFICER MARES: We came southbound from Fullerton onto Campbell, and at that time I observed Mr. Bonslater who's seated at the defense table coming from 2339 North Campbell from the stairwell.

STATE'S ATTORNEY: What, if anything, is that defendant wearing?

OFFICER MARES: He looked in your direction.

STATE'S ATTORNEY: What, if anything, is that defendant wearing today in court?

OFFICER MARES: Wearing the tan shirt with the dark jacket.

STATE'S ATTORNEY: Let the record reflect the in-court identification of the defendant.

THE COURT: Record will so reflect."

Defense counsel then asserted that Mares never "pointed to the defendant in court" and that since there was "[n]o indication of pointing on the record *** there is no in-court identification of this defendant." Defense counsel argued that for an in-court identification to be sufficient "[h]e must point [defendant] out for the record and state what he is wearing. We do not have that." The trial judge responded, "He did state that." Defense counsel persisted that Mares had not sufficiently identified defendant. Finally, the trial judge explicitly stated, "The Court finds that the record does support an in-court identification of the defendant. There was no other person in the courtroom at the time of the identification." The following

colloquy then occurred between defense counsel and an incredulous trial judge:

"DEFENSE COUNSEL: Your Honor, I at this time would object to your testifying in this case also.

THE COURT: These are findings of fact, Counsel.

DEFENSE COUNSEL: I understand that your Honor, I must make my record, do you understand that your Honor.

THE COURT: These are findings of fact."

After repeating this argument for the record, defense counsel then asserted that since Mares did not witness defendant delivering the narcotics to another person, the court could not find defendant guilty of possession with the intent to deliver. He argued that the court could only "find [defendant] guilty of straight possession."

The prosecutor argued in rebuttal that the large amount of drugs in defendant's possession indicated that it was clearly not for "personal consumption" and that defendant's possession of $1,968 and a portable telephone was further indication of the intent to deliver the narcotics.

The trial judge then found defendant guilty beyond a reasonable doubt of possession of a controlled substance with the intent to deliver. At the sentencing hearing, the judge sentenced defendant to the minimum term of six years' imprisonment. Defendant filed this timely appeal.

Defendant's first contention on appeal is that Officer Mares' version of the circumstances surrounding the arrest was so "improbable and unsatisfactory" that no rational trier of fact could have convicted him. Therefore, defendant asserts that the State failed to prove him guilty beyond a reasonable doubt of possession of a controlled substance with the intent to deliver. The State, on the other hand, argues that Mares' testimony was sufficient to support defendant's conviction.

In a bench trial, the court is the trier of fact and it is the function of the trial judge who heard the evidence and observed the witnesses to weigh that evidence, determine the credibility of the witnesses, draw reasonable inferences therefrom, and resolve any conflicts in the evidence. (*People v. Molstad* (1984), 101 Ill. 2d 128, 133, 461 N.E.2d 398, 401; *People v. Ford* (1990), 195 Ill. App. 3d 673, 675, 553 N.E.2d 33, 35.) Accordingly, after a defendant has been convicted of an offense, it is not the job of a reviewing court to second-guess the fact finder (*People v. Jones* (1991), 215 Ill. App. 3d 652, 655, 575 N.E.2d 561, 563), but solely to view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.

(*People v. Wicks* (1992), 236 Ill. App. 3d 97, 111, 603 N.E.2d 594, 603.) Additionally, identification testimony of a single witness, if credible, is sufficient to sustain a conviction. (*Molstad,* 101 Ill. 2d at 133, 461 N.E.2d at 401.) Thus, the factual findings of the trial judge in a bench trial will not be disturbed on appeal unless "the evidence is so palpably contrary to the verdict or judgment that it is unreasonable, improbable or unsatisfactory and, thus, creates a reasonable doubt of guilt." *People v. Pintos* (1988), 172 Ill. App. 3d 1096, 1101, 527 N.E.2d 312, 315, *appeal granted* (1988), 123 Ill. 2d 564, 535 N.E.2d 408, *aff'd* (1989), 133 Ill. 2d 286, 549 N.E.2d 344.

■ We believe the evidence introduced by the State was sufficient to prove defendant guilty beyond a reasonable doubt. Mares' testimony along with the stipulated testimony of the police laboratory chemists established every element of the offense and was sufficient to support defendant's conviction of possession of a controlled substance with the intent to deliver.

Defendant cites three cases in which reviewing courts rejected the testimony of the State's witnesses and reversed convictions as not having been proven beyond a reasonable doubt. He asserts that these cases support his argument that Mares' testimony was so improbable and unsatisfactory that no rational trier of fact could have convicted him. These cases, however, are distinguishable.

In *People v. Garner* (1974), 19 Ill. App. 3d 728, 312 N.E.2d 678, defendant was tried and convicted, in effect, of sexually assaulting a minor. In reversing on the ground that the record did not support defendant's conviction, the *Garner* court noted that the State's evidence was rebutted by the defendant's alibi testimony, which was supported by several witnesses. Additionally, the court noted that the victim's testimony was contradicted by the physical evidence and his conduct during the alleged attack. Moreover, the *Garner* court also found that the victim's mother's testimony as to her actions following the alleged attack was "contrary to a mother's human nature." 19 Ill. App. 3d at 732.

In *People v. Smith* (1971), 3 Ill. App. 3d 64, 278 N.E.2d 551, the appellate court reversed defendant's conviction for murder on the grounds that the evidence upon which it was based was of an "unsatisfactory character" and there existed the real possibility that the verdict "was the result of passion or prejudice." (3 Ill. App. 3d at 68.) The *Smith* court noted that the State's sole witness was not a direct occurrence witness, but rather testified "only to events which circumstantially implicated defendants." (3 Ill. App. 3d at 67.) Additionally, his testimony was "uncorroborated, even though the State was aware of numerous other occurrence witnesses" and "weak,

contradictory, impeached, and refuted by the defendant." 3 Ill. App. 3d at 68.

Finally, in *People v. Quintana* (1968), 91 Ill. App. 2d 95, 234 N.E.2d 406, defendant's conviction of possession of marijuana was reversed because the police officer's "suspect" testimony was insufficient to prove defendant guilty beyond a reasonable doubt. The reviewing court was "skeptical" of the arresting officer's testimony, but not because of any inherent unbelievability in the testimony. The *Quintana* court noted that the officer's testimony that he observed defendant from a distance of 20 feet discard two packages "of the size and shape commonly used to contain marijuana" (91 Ill. App. 2d at 96) was contradicted by the police department's chemist who testified that the packages were "not the general run of packaging." (91 Ill. App. 2d at 97.) The court also noted that the trial judge who convicted defendant of possession of the packages of marijuana had previously expressed his doubt about the officer's veracity. Moreover, the evidence at trial showed that the officer had unlawfully arrested and searched defendant at least five times in the previous four months in an unsuccessful attempt to induce defendant to become "the officer's personal informer." 91 Ill. App. 2d at 98; *Ford*, 195 Ill. App. 3d 673, 553 N.E.2d 33 (defendant was not proven guilty beyond a reasonable doubt where officer's principle description of defendant was incomplete and his in-court identification of defendant was weak, contradicted and admittedly incorrect).

In the instant case, unlike in *Garner, Smith,* and *Quintana*, the defense did not challenge the State's evidence. The defense did not attempt to contradict the State's evidence nor was the State's evidence conflicting. The defense did not refute Mares' testimony or even attempt to impeach him. Additionally, there was no evidence of a previous relationship between Mares and defendant. Standing unrebutted and unchallenged, Mares' testimony in conjunction with the stipulation entered into between the parties was sufficient to support defendant's conviction beyond a reasonable doubt.

■ Defendant's second contention on appeal is that he was denied the effective assistance of counsel where his attorney failed to move to suppress the evidence against him, failed to make an opening statement, failed to cross-examine the State's only witness, failed to move for a directed finding, failed to present any defense witnesses, and made a closing argument which was refuted by the court reporter's notes and revealed counsel's gross ignorance of the law. The State directs our attention to cases which have held individual instances of conduct such as defendant complains of here to be trial strategy. (See *People v. Mendez* (1991), 221 Ill. App. 3d 868, 873, 582

N.E.2d 1265, 1269 (the filing of pretrial motions generally is considered a matter of professional judgment beyond the scope of appellate review); *People v. Georgev* (1967), 38 Ill. 2d 165, 169, 230 N.E.2d 851, 854 (waiving opening statements is a tactical choice involving trial strategy); *People v. Lewis* (1981), 88 Ill. 2d 129, 156, 430 N.E.2d 1346, 1359 (failure of counsel to object to testimony is not incompetence because counsel is not required to make losing objections in order to provide effective assistance); *People v. Whittaker* (1990), 199 Ill. App. 3d 621, 629, 557 N.E.2d 468, 472 (defense counsel's decision not to call witnesses is presumed to be tactical choice which will not support an ineffectiveness claim); *People v. Crum* (1989), 183 Ill. App. 3d 473, 488, 539 N.E.2d 196, 206 (decision not to cross-examine witnesses is presumed to be matter of trial strategy); *People v. Gill* (1988), 169 Ill. App. 3d 1049, 1055, 523 N.E.2d 1239, 1243 (concession of defendant's guilt to lesser offense has been held to be valid trial strategy in some instances).) We note, however, that the competence of defense counsel is to be determined "from a consideration of the totality of counsel's conduct, not isolated incidents." (*People v. McKendrick* (1985), 138 Ill. App. 3d 1018, 1026, 486 N.E.2d 1297, 1303.) Thus, while we concede that individual instances of the above conduct are generally presumed to be matters of trial strategy outside the scope of appellate review, we cannot say, after viewing the totality of counsel's conduct in the context of this record, that his decisions could possibly have been part of any conceivable valid trial strategy.

■ The sixth and fourteenth amendments to the United States Constitution guarantee an accused in a Federal or State trial the right to the assistance of counsel. (U.S. Const., amends. VI, XIV; *Strickland v. Washington* (1984), 466 U.S. 668, 684, 80 L. Ed. 2d 674, 691, 104 S. Ct. 2052, 2063; *People v. Mitchell* (1984), 105 Ill. 2d 1, 11, 473 N.E.2d 1270, 1275.) This right to the assistance of counsel has long been recognized to be " 'the right to the effective assistance of counsel' " (*United States v. Cronic* (1984), 466 U.S. 648, 654, 80 L. Ed. 2d 657, 664, 104 S. Ct. 2039, 2044, quoting *McMann v. Richardson* (1970), 397 U.S. 759, 771 n.14, 25 L. Ed. 2d 763, 773 n.14, 90 S. Ct. 1441, 1449 n.14), because otherwise the appointment of counsel would be converted "into a sham" and could be satisfied by the mere formal appointment of an attorney. (*Cronic*, 466 U.S. at 654-55, 80 L. Ed. 2d at 665, 104 S. Ct. at 2044.) Explaining the importance of this fundamental right, the *Cronic* Court stated:

"An accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases 'are necessities, not luxuries.' Their presence is essential

because they are the means through which the other rights of the person on trial are secured. Without counsel, the right to a trial itself would be 'of little avail,' as this Court has recognized repeatedly. 'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.' " *Cronic*, 466 U.S. at 653-54, 80 L. Ed. 2d at 664, 104 S. Ct. at 2043-44.

Although an accused has a fundamental right to the assistance of counsel for his defense, however, he is only guaranteed competent, not perfect, representation. (*Cronic*, 466 U.S. at 655, 80 L. Ed. 2d at 665, 104 S. Ct. at 2044-45; *People v. McPhee* (1993), 256 Ill. App. 3d 102, 106.) "When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred." (*Cronic*, 466 U.S. at 656, 80 L. Ed. 2d at 666, 104 S. Ct. at 2045.) Consequently, as a general rule, in order for a defendant to successfully demonstrate that his counsel's errors rose to the level of ineffective assistance, he must establish that counsel's performance fell below an objective standard of reasonableness and that, but for this substandard performance, there is a reasonable probability that the outcome of the trial would have been different. *Strickland*, 466 U.S. at 687-94, 80 L. Ed. 2d at 693-98, 104 S. Ct. at 2064-68; *People v. Martin* (1992), 236 Ill. App. 3d 112, 120, 603 N.E.2d 603, 608.

The Supreme Court has stated, however, that there are certain types of errors such as the actual or constructive denial of the assistance of counsel altogether which "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." (*Cronic*, 466 U.S. at 658, 80 L. Ed. 2d at 667, 104 S. Ct. at 2046; *Strickland*, 466 U.S. at 692, 80 L. Ed. 2d at 696, 104 S. Ct. at 2067.) The *Cronic* Court asserted that, at a minimum, defense counsel must subject the prosecution's case to "meaningful adversarial testing." (*Cronic*, 466 U.S. at 656, 80 L. Ed. 2d at 666, 104 S. Ct. at 2045.) "[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Cronic*, 466 U.S. at 659, 80 L. Ed. 2d at 668, 104 S. Ct. at 2047.

■ Based on the record, it cannot be said that defense counsel provided defendant with adequate legal assistance. The State's entire case against defendant consisted of Officer Mares' testimony. On its face, Mares' testimony was not so clear and convincing that it would have been fruitless for defense counsel to challenge it. In fact, we believe that, at a minimum, defense counsel was required to challenge the veracity of Mares' statements.

Mares testified that, at approximately 8:15 p.m., he and his partner were working undercover in an unmarked police car and were joining several other tactical units in the pursuit of an armed robbery suspect when he observed defendant exit a stairwell at 2339 North Campbell. Mares stated that defendant "looked in my direction" and then, in plain view of the officer, dropped a clear plastic bag containing cocaine to the ground. According to Mares' unchallenged testimony, the officers then ceased their pursuit of the armed robbery suspect in order to arrest defendant.

Although we do not believe that this testimony was "so improbable and unsatisfactory" that no rational trier of fact could have believed it, it definitely raised numerous questions and clearly was not immune from attack. For instance, it is not apparent from the record how defendant was able to immediately recognize Mares and his partner as police, since they were driving an unmarked car and there was no testimony as to whether the officers were using their siren at the time. Mares' testimony also does not explain how he was able to observe defendant's suspicious behavior so clearly since there was no testimony as to the lighting conditions on the street that night, the size of the "clear plastic bag," or the distance between Mares and defendant when they saw each other. In our opinion, it is also unclear from Mares' direct testimony whether defendant removed the bag of cocaine from his pocket before retreating back into the building, or whether he was carrying the "clear plastic bag" of cocaine in plain view. Either of these actions, however, would be extremely curious and, on its face, difficult to believe. Defense counsel clearly could have challenged Mares' testimony and, even without putting defendant on the stand, could have made a strong, plausible argument that the circumstances surrounding defendant's arrest were not as Mares had stated.

In fact, the only way to have subjected the prosecution's case to "meaningful adversarial testing" would have been to challenge Mares' testimony and there is absolutely no valid trial strategy which could explain defense counsel's failure to do so. After reviewing counsel's closing argument, which is the only indication of his trial strategy, the only conceivable explanation we can find is that counsel was proceeding under a mistaken and baseless understanding of the law.

First, although the court reporter's notes illustrate a clear identification of defendant in court, he argued that Mares inadequately identified defendant because he did not "point" at him during his testimony. After persisting with this argument in order to "make my record," he then argued that the court could not find defendant

guilty of possession of a controlled substance with the intent to deliver because Mares failed to testify that he actually saw defendant selling the narcotics to another person. The State asserts that this was a valid argument since under the totality of the circumstances the judge could have found that defendant did not have the requisite intent.

The record shows, however, that defense counsel was not arguing that the judge should find defendant not guilty of the charged offense because the State had failed to prove intent; he was arguing that the judge could not find defendant guilty because Mares had not testified to a delivery. The actual delivery of narcotics to another person, however, is not an element of the offense. The law is that a reasonable inference of intent to deliver arises from possession of a quantity of drugs greater than that which might be used for personal consumption. (*People v. Romero* (1989), 189 Ill. App. 3d 749, 546 N.E.2d 7.) In addition to possession of a large quantity of drugs, the inference of intent can be enhanced by the manner in which they are kept, the presence of a large amount of money and the possession of other paraphernalia associated with drug dealing. (*People v. Witherspoon* (1991), 216 Ill. App. 3d 323, 334, 576 N.E.2d 1030, 1037; *People v. Williams* (1990), 200 Ill. App. 3d 503, 518, 558 N.E.2d 261, 271; *People v. Schaefer* (1985), 133 Ill. App. 3d 697, 703, 479 N.E.2d 428, 432.) When defendant was arrested he was allegedly in possession of several packages containing in gross over 70 grams of cocaine, several packages containing a quantity of marijuana, $1,968, and a portable telephone. In light of these facts and the absence of any legally valid argument presented on behalf of the defendant, the only conclusion the court could reasonably have come to was that defendant was selling drugs.

In *People v. Fernandez* (1987), 162 Ill. App. 3d 981, 516 N.E.2d 366, the appellate court held that defense counsel was ineffective in failing to file a pretrial motion to suppress on the grounds that defendant's confession was involuntary. One of the court's bases for reversal was that defense counsel admitted that "it was her misunderstanding of the law, rather than a tactical consideration, which resulted in the failure to press the issue of the voluntariness of the confessions." Although counsel in this case does not admit his misunderstanding of the law, it is clear from the record.

A defendant's constitutional right to plead not guilty "includes the obligation of his attorney to structure the trial of the case around his client's plea" (*People v. Torres* (1991), 209 Ill. App. 3d 314, 319, 568 N.E.2d 157, 160) and to hold the prosecution to its burden of proving defendant guilty beyond a reasonable doubt. (*People v.*

*Chandler* (1989), 129 Ill. 2d 233, 245, 543 N.E.2d 1290, 1294.) By failing to challenge Mares' testimony and making baseless and legally unsupported assertions during closing argument, defense counsel presented "no real defense at all." *Chandler*, 129 Ill. 2d at 249, 543 N.E.2d at 1296.

Accordingly, since defense counsel failed to challenge Officer Mares' testimony, failed to otherwise act on behalf of defendant, and made baseless and legally unsupported assertions during closing arguments, defendant was deprived of his right to have the assistance of counsel in subjecting the State's case to "meaningful adversarial testing." Defense counsel failed to challenge the State's case in any valid way and thus the result of this trial is "presumptively unreliable." Therefore, we must reverse the judgment of the circuit court of Cook County finding defendant guilty of possession with the intent to deliver more than 15 but less than 100 grams of a controlled substance containing cocaine and remand for a new trial.

Reversed and remanded.

CAMPBELL, P.J., and O'CONNOR, J., concur.