THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BENJAMIN CAMPA, Defendant-Appellant.

First District (6th Division)   No. 1—03—0923

Opinion filed October 1, 2004.

Michael J. Pelletier, Kimberly Jansen, and Steven W. Becker, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Manny Magence, and Amit Trivedi, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Following a bench trial, defendant, Benjamin Campa, was found guilty of driving under the influence of alcohol (625 ILCS 5/11—501(a)(2) (West 2000)), driving without a license (625 ILCS 5/6—101 (West 2000)), and operating an uninsured motor vehicle (625 ILCS 5/3—707 (West 2000)). The trial court sentenced defendant to 24 months' supervision and fined defendant a total of $555. Defendant appeals contending, *inter alia*, that the trial court erred when it denied his petition for discharge based on a violation of the speedy-trial provision of section 103—5 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/103—5 (West 2000)) because the trial court incorrectly held that he was not "in custody" while participating in the Cook County sheriff's day reporting program. We reverse.

## BACKGROUND

The relevant facts are not in dispute. Defendant was arrested on August 19, 2001. The record is unclear, but he was apparently placed on electronic home monitoring shortly after his arrest. The parties do not dispute that defendant was "in custody" for a period of 15 days while on electronic home monitoring. On September 5, 2001, defendant signed a document entitled "Agreement Governing Transfer to the Day Reporting Center." The agreement provided:

"This document constitutes an agreement between the above named participant, who has been released under the Cook County Department of Corrections administrative furlough, and the Department of Community Supervision and Intervention, Day Reporting Program. The agreement specifies the terms and conditions by which the undersigned is released to the Day Reporting Program.

PROGRAM CONDITIONS

Report to the DRC as scheduled.

Shall not leave the State of Illinois without permission of the court.

Attend all portions of the DRC program as determined and abide by program rules.

Attend all scheduled court dates and inform DRC personnel of any changes in dates or court status.

Submit to urinalysis as scheduled and participate in outpatient and/or residential drug and alcohol counseling/treatment as determined.

Report any changes in address and living arrangements within 24 hours.

If employed or in school, attend as reported.

Upon request of DRC personnel, furnish proof of school and/or employment, if applicable.

Notify DRC personnel immediately of any new arrests or outstanding warrants.

Refrain from use of alcohol and/or illicit substances.

Refrain from possessing a firearm or other dangerous weapons.

I have read or have had the above conditions read and explained to me and understand them. I understand that I am under the supervision of the DCSI Day Reporting Center as a condition of my release under administrative furlough and agree to abide by all DRC conditions and rules. I understand that my failure to comply with the above and any additional conditions shall result in the revocation of this agreement and return to the Cook County Department of Corrections."

Before trial, defendant petitioned for discharge, arguing that he was "in custody" and that more than 120 days had elapsed. The State responded, arguing that participation in the day reporting program was no different from being out on bond. The trial court held that defendant was not "in custody" within the meaning of the Code's speedy-trial provision and denied the petition for discharge. Defendant was subsequently tried and convicted. The State does not contest defendant's calculation that 157 days, not attributable to him, elapsed before trial.

In a posttrial motion, defendant again raised his speedy-trial challenge to his conviction. The trial court again held that defendant was not in custody. Defendant requested the trial court to make a finding regarding whether defendant was released on bail or recognizance, but the trial court refused to rule on the issue. Defendant timely appeals.

## DISCUSSION

Defendant first contends that the trial court erred when it denied his petition for discharge because he was "in custody" within the meaning of the Code while participating in the day reporting program. This contention requires us to interpret the meaning of the phrase "in custody" in the Code. The construction of a statute presents a question of law that we may review *de novo*. *People v. Belk*, 203 Ill. 2d 187, 192 (2003).

■ The primary goal of statutory construction is to ascertain and give effect to the intent of the legislature. *Belk*, 203 Ill. 2d at 192, citing *People v. Richardson*, 196 Ill. 2d 225, 228 (2001). The starting point for determining the intent of the legislature is the language of

the statute itself. *People v. Robinson*, 172 Ill. 2d 452, 457 (1996). Section 103—5 provides:

"Speedy trial.

(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, by an examination for fitness ordered pursuant to Section 104—13 of this Act, by a fitness hearing, by an adjudication of unfitness to stand trial, by a continuance allowed pursuant to Section 114—4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record.

\*\*\*

(b) Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant, by an examination for fitness ordered pursuant to Section 104—13 of this Act, by a fitness hearing, by an adjudication of unfitness to stand trial, by a continuance allowed pursuant to Section 114—4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal. The defendant's failure to appear for any court date set by the court operates to waive the defendant's demand for trial made under this subsection.

\* \* \*

(d) Every person not tried in accordance with subsections (a), (b) and (c) of this Section shall be discharged from custody or released from the obligations of his bail or recognizance." 725 ILCS 5/103—5 (West 2000).

In Illinois, criminal defendants enjoy both constitutional and statutory rights to a speedy trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; 725 ILCS 5/103—5(a) (West 2000). Although similar, these rights are not necessarily coextensive. *People v. Mayo*, 198 Ill. 2d 530, 535 (2002). Generally, the speedy-trial provision of the Code can be viewed as establishing a bright-line standard, which, if observed, prevents the constitutional speedy-trial issue from arising in a case. See *People v. Gooden*, 189 Ill. 2d 209, 220 (2000). Because it enforces a constitutional right, the speedy-trial provision of the Code must be liberally construed in favor of a defendant. *People v. Colson*, 339 Ill. App. 3d 1039, 1047 (2003).

Our resolution of this appeal turns on our determination of whether defendant was "in custody" within the meaning of the statute. Defendant argues that he was and that his conviction must be

reversed because he was not tried within the 120-day limit of section 103—5(a). The State counters that the conditions placed on defendant as a result of his participation in the day reporting program were analogous to those imposed on a defendant on bail or recognizance and that the 160-day limit of section 103—5(b) should apply. Because the statute does not define the word "custody," we must assume that the legislature intended the term to have its ordinary and popularly understood meaning. See *People v. Maggette*, 195 Ill. 2d 336, 349 (2001). One popular legal dictionary defines "custody," *inter alia*, as "the detainer of a man's person by virtue of lawful process or authority." Black's Law Dictionary 347 (5th ed. 1979). However, the dictionary further adds, "The term is very elastic and may mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession." Black's Law Dictionary 347 (5th ed. 1979). The question before us is whether the legislature intended a similarly elastic meaning when it used the term "custody" in the speedy-trial statute.

Defendant argues that we must consider the meaning of "in custody" in contrast with the phrase "on bail or recognizance," and urges us to apply the rule of statutory construction that the enumeration of one thing in a statute implies the exclusion of all others. See *Baker v. Miller*, 159 Ill. 2d 249, 260 (1994). Defendant further argues that if section 103—5(b) does not apply to a defendant, section 103—5(a) must. The rule *expressio unius est exclusio alterius* is not a rule of law, but a rule of statutory construction that is subordinate to a strong indication of contrary legislative intent. *Baker*, 159 Ill. 2d at 260. Further, we believe there may exist circumstances, the enumeration of which is unnecessary to our disposition of this appeal, under which a defendant cannot be classified as either "in custody" or "on bail or recognizance."[1] However, we agree with defendant that closer examination of the terms "bail" and "recognizance" provides a useful method for clarifying the legislative intent behind the phrase "in custody."

Section 102—6 of the Code defines "bail" as follows:

" 'Bail' means the amount of money *set by the court* which is required to be obligated and secured as provided by law for the release of a person in custody in order that he will appear before the court in which his appearance may be required and that he will

---

[1]Although, as defendant argues, such a defendant would not be protected by the statutory speedy-trial limitations, constitutional speedy-trial considerations would still apply to protect a defendant from unreasonable delay.

comply with such conditions as set forth in the bail bond." (Emphasis added.) 725 ILCS 5/102—6 (West 2000).

Section 12—19 of the Code defines "recognizance" as follows:

" 'Recognizance' means an undertaking without security entered into by a person by which he binds himself to comply with such conditions as are set forth therein and which may provide for the forfeiture of a sum *set by the court* on failure to comply with the conditions thereof." (Emphasis added.) 725 ILCS 5/102—19 (West 2000).

As these definitions suggest, the trial court is responsible for either admitting a defendant to bail or placing him on recognizance. Under section 110—5 of the Code, it is the trial court that determines the amount of bail and the conditions of release. 725 ILCS 5/110—5 (West 2000). Under section 110—2, it is also the trial court that determines whether a defendant may be released on his own recognizance. 725 ILCS 5/110—2 (West 2000).

■ In the case before us, the trial court had no involvement in the decision to place defendant in the day reporting program. The decision was made entirely by the sheriff's department, and the sheriff's department alone determined the conditions of defendant's "release" into the program. For this reason, we can reject any suggestion that defendant was "on bail or recognizance" within the meaning of the statute. Defendant could achieve such status only through the action of the trial court.

■ We are unwilling to adopt defendant's argument that our conclusion that he was not on bail or recognizance mandates the conclusion that he was in custody. However, we agree that the issue of who imposed the conditions of defendant's release is at least as important as the nature of those conditions. Here, the sheriff's department, not the court, made the determination that defendant was eligible for participation in the day reporting program. It was the sheriff's department, not the court, that imposed the obligation for alcohol counseling and treatment. The sheriff's department, not the court, required defendant to submit to urinalysis. The sheriff's department, not the court, established the schedule for defendant to report to the Day Reporting Center. More importantly, it was the sheriff's department that would determine whether defendant had complied with the conditions imposed or whether he should be returned to the Cook County department of corrections. Although the State argues that it would be required to return to the trial court to seek a warrant for defendant's arrest if he violated the conditions of the day reporting program, there is nothing in the agreement imposing that requirement, and the State has cited no statute or case law imposing such a

requirement. Moreover, it is unclear what legal recourse, if any, defendant would have had if the sheriff's department had unilaterally decided that he was no longer eligible for the day reporting program or decided to discontinue the program entirely. Accordingly, we must conclude that defendant remained under the control of the sheriff's department, which retained the power to imprison defendant. We are reluctant to find that the sheriff's release of defendant, unauthorized by the trial court, circumvented the prophylactic effect of the 120-day rule. See *People v. Gooding*, 21 Ill. App. 3d 1064, 1067 (1974), *rev'd on other grounds*, 61 Ill. 2d 298 (1975) Therefore, we conclude that defendant remained in the custody of the sheriff's department and "in custody" within the meaning of the speedy-trial statute.

We recognize that the conditions of defendant's custody were far less onerous than remaining physically confined full-time in the Cook County department of corrections. However, earlier case law supports our conclusion that an individual can be in custody despite enjoying considerable freedom. For example, in *People v. Simmons*, 88 Ill. 2d 270 (1981), our supreme court held that a prisoner at the Peoria Community Correctional Center who was allowed six hours of independent day release at a shopping center had escaped from a "penal institution" when he failed to return as scheduled. *Simmons*, 88 Ill. 2d at 273-74. More recently, the Fifth District held that a defendant living at his mother's house while serving his sentence on electronic home detention was properly found guilty of possession of a controlled substance in a penal institution after he sold cocaine to an informant while standing in his mother's driveway. *People v. Moss*, 274 Ill. App. 3d 77, 82 (1995).

The State argues that even if we conclude that defendant was not on bail or recognizance, we should find that the longer 160-day period applies because the terms of defendant's release under the day reporting program were similar to those of a defendant on bail or recognizance. The State argues that the only limitation on defendant's movement was a requirement to remain in the state. Defendant responds that the conditions were more burdensome than for a defendant on bail or recognizance because he was required to report in person every day. We find it unnecessary to decide this issue. We find that defendant was in custody within the plain meaning of the statute without consideration of the conditions of his custody. Moreover, the value of the speedy-trial statute as a bright-line test would be significantly diminished if trial courts were required to engage in fact-finding regarding the conditions of a defendant's custody before determining whether the 120-day or 160-day limit applied. Although we find some merit to the State's suggestion that the longer period should apply to

defendants in a day reporting program, the plain language of the statute does not support that interpretation. Whether such a change in the statute is desirable is a matter for the legislature, and not this court, to decide.

We conclude that defendant was in custody within the meaning of the speedy-trial statute. Because defendant was in custody and he was not tried within 120 days, the trial court erred when it denied his petition for discharge. Accordingly, we reverse the judgment of the circuit court and vacate defendant's convictions. See *People v. Schmidt*, 233 Ill. App. 3d 512, 517 (1992).

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

McNULTY and O'MARA FROSSARD, JJ., concur.