THIRD DIVISION

May 11, 2005

Nos. 1-03-3224 and 1-03-3225 (Consolidated)

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v.
 ) 

)

HERSHEY MARTIN and REGINALD CROSS, ) Honorable

) Marjorie C. Laws,

Defendants-Appellants. ) Judge Presiding.

JUSTICE SOUTH delivered the opinion of the court:

Following a bench trial, defendant Reginald Cross (Cross) was convicted of possession of a controlled substance with intent to deliver and unlawful use of a weapon by a felon.  Defendant Hershey Martin (Martin) was convicted of possession of a controlled substance with intent to deliver and possession of cannabis with intent to deliver.  Both defendants were sentenced to concurrent prison terms of five years.  Defendants contend on appeal that the evidence was insufficient to prove their guilt beyond a reasonable doubt because the testimony of the State's sole witness was inherently unbelievable.  Defendant Cross also argues he is entitled to sentencing credit for time he spent participating in the Cook County Day Reporting Program.  We affirm.

At trial, Chicago police officer Michael Campbell testified that around 1:41 p.m. on October 5, 2001, he was part of a tactical team of approximately 20 officers executing a search warrant at 6929 South Justine, a single-family home.  Officer Campbell knocked on the basement door and announced his office.  Using a battering ram, a pry bar and bolt cutters, Campbell gained entry into the basement.  Campbell discovered in the basement a scale, a clear plastic knotted bag containing suspected crack cocaine and numerous "ziplock" and sandwich plastic bags.  Nobody was present in the basement.  Campbell testified he kept the scale, plastic bags and suspected crack cocaine in his custody and control, meaning that he put them in a blue plastic inventory bag, until he inventoried them.  Campbell inventoried the suspected crack cocaine under number 2597014 and the scale and bags under number 2597015.

After he recovered the items from the basement, Campbell went to the first floor of the home with approximately five other officers, where he saw two or three women and one or two small children toward the front of the house.  Campbell discovered defendant Cross in a rear bedroom, lying on the only bed in the room.  Cross was alone.  Campbell asked Cross to stand up and conducted a pat-down search. 

Defendant Martin was discovered in another bedroom to the left of the kitchen containing two beds.  Martin was lying on the only bed that had sheets.  Campbell asked Martin to stand up and conducted a pat-down search. 

Campbell asked both defendants to go into the living room.  After a second pat-down search was conducted, defendants were placed in a police van outside.  The women in the house were also searched and taken outside.  A canine search of the house, including the two bedrooms, was then conducted.  Neither of the bedrooms had locks on the door. 

Campbell recovered $3,647, "numerous amounts of cannabis," and a loaded 9-millimeter semiautomatic handgun from a clothes basket in the rear bedroom where defendant Cross was discovered.  Campbell testified he kept the suspected cannabis, which consisted of 63 or 64 bags, in his custody and control until he inventoried them under number 2597018.  Campbell also discovered Cross's state identification card listing 6929 South Justine as his address, and men's shoes, jeans and clothing in that bedroom. 

From the bed that Martin was sleeping on, Campbell recovered either $647 or $673 as well as nine "ziplock" and four knotted bags containing suspected cannabis.  The suspected cannabis was inventoried under number 2597016 and the money was inventoried under number 2597017.  Campbell also recovered from that bedroom two items, including a canine rabies certificate, listing Martin's address as 6929 South Justine, as well as men's clothing and shoes.

After the above evidence was recovered, Campbell took defendants into custody and read them their 
Miranda
 rights.  Campbell testified that at the station, in the presence of Sergeant Leibas, defendant Cross "stated that the weapon was his and that he had it for protection and that the narcotics that we found in the house were both his and [Martin's] *** and that they were just trying to make some money."  Campbell also testified that defendant Martin, also in the presence of Leibas, separately told him "that the narcotics were his and Cross's and that they were also selling it just to make a little money."  

The State entered into evidence a certified copy of Cross's prior felony conviction.  The parties also stipulated to a forensic chemist's testimony indicating that the items under inventory number 2597014 weighed 4.4 grams and tested positive for cocaine, that the item under inventory number 2597018 consisted of 59 bags, 1 of which tested positive for 0.6 of a gram of cannabis, and that the items under inventory number 2597016 consisted of 13 bags, 4 of which weighed 38.7 grams and tested positive for cannabis.

Defense counsel, contending that the State failed to show constructive possession of the narcotics, moved for a directed finding.  Counsel argued defendants' alleged statements were unwritten, and therefore unsigned, and did not identify the narcotics.  Further, counsel argued that Campbell's testimony indicating that defendants slept through the police prying open the basement door, that Campbell recovered all of the evidence even though there were 20 officers present, that Campbell was able to conduct pat-down searches of defendants while he held the blue plastic evidence bag, and that both defendants happened to be alone in separate bedrooms where the evidence was recovered "just strain[ed] any type of credibility or credulity."  The trial court denied defendants' motion.

Defendants presented testimony from Cross's mother, Carrie Cross (Carrie), Cross's sister, Cheryl Cross (Cheryl), and Cross's girlfriend, Cassandra Drayton (Cassandra).  Both defendants also testified.  This testimony established that several adults, including Carrie, Cheryl, Sheila Cross (Sheila), Shontae Cross (Shontae), and Cassandra, in addition to defendants, lived at 6929 South Justine.  Several children, including Cheryl's son Joshua, Sheila's daughter Tanisha, Cross's daughter Arianna, and Shontae's son Mikiel also lived there.  Other individuals, including a friend of Cross's brother named "Chubby" or "Chub," and Martin's son, "little Joshua," were also at the house on October 5, 2001, when the police arrived.  Defense evidence additionally established that neither bedroom from which Campbell testified he recovered evidence had locks on the door.

Defense witnesses established that defendant Cross stayed in the rear bedroom with Cassandra and Arianna, while the bedroom to the left of the kitchen was shared by Carrie, Cheryl and Joshua.  Defendant Martin slept in the basement and did not nap or keep any of his belongings in the bedroom Campbell testified he was found in.  Neither Carrie, Cheryl nor Cassandra saw any drugs in either the bedrooms or the basement before the police arrived.

Cheryl testified that she was in the bedroom to the left of the kitchen, which she shared with Carrie and her son Joshua, when the police arrived.  Defendant Martin was in the kitchen by the refrigerator.  Cheryl did not see defendant Cross. 

Cassandra testified she was alone cleaning in the back bedroom that she shared with Cross and Arianna when the police arrived.  The laundry basket in the bedroom was empty because she did laundry that day. 

An officer entered the door to Cassandra's room and took her to the basement.  On the way, she saw Martin in the kitchen with other officers.  In the basement, Cassandra saw that officers had Cross and Chub "on the floor."  An officer took Cassandra back upstairs and led her outside to the front yard.  Cassandra also saw Chub exit a police van.  After the police searched the house, $1,500 was missing from a jacket that was hanging in her bedroom. 

Defendant Cross, a convicted felon, testified he was in the basement watching television with Chub when three officers "busted in."  Cross was not in his bedroom.  An officer handcuffed him and Chub and threw them to the ground.  About seven minutes later, an officer took Cross and Chub upstairs and led them through the kitchen, where Cross saw Martin standing by the refrigerator.  The officer then took Cross and Chub outside and put them in a police van, where defendant Martin was also placed.  Defendants remained there for approximately two hours, but Chub was allowed to leave.  

Cross denied telling the police that the narcotics, the cocaine, the cannabis, the money, or the gun belonged to him. 

Defendant Martin, a convicted felon, testified that he was in the kitchen when two officers came through the backdoor and pointed a gun at him.  Martin slept in the basement and did not see any cocaine, scales or bags on the table when he woke up that morning.  Martin saw Cross come up from the basement with an officer.  The police then took Martin into the basement and outside through the basement door.  Martin was then put in a police van with Cross and Chub, but Chub was allowed to leave.  

Martin testified that he did not see any marijuana in Carrie and Cheryl's bedroom and denied telling Officer Campbell that the narcotics belonged to him and Cross. 

In rebuttal, Campbell testified that only two men were placed in the police van and he never saw a man named Chub either in the house or in the police van.  Campbell also did not see Cross or another man in the basement.

The trial court found defendant Cross guilty of possession of a controlled substance with intent to deliver and unlawful use of a weapon by a felon and found defendant Martin guilty of possession of a controlled substance with intent to deliver and possession of cannabis with intent to deliver.  In making its determination, the court first found the "lab" for the cannabis recovered from the laundry basket in Cross's bedroom problematic. It therefore found Cross not guilty of possession of cannabis with intent to deliver and armed violence.  The court then found defendants' theory of the case, that the evidence was planted, to be incredible.  The court also found Officer Campbell to be credible, that he was not "like a superman," and that it made "perfect sense" that he would be the sole officer inventorying the evidence found in the house.  As far as defendants' statements were concerned, the court found:

"I'd have to believe that they didn't make any statements.  I'd have to throw everything out in this case and I think if you didn't have the statements with the number of people that were in the house the State would have a problem proving constructive possession of the items found in this house but you do have the statements by the two defendants that the narcotics were [theirs].  I don't believe that the State has to prove which narcotics that they're talking about."

Defendants contend that the evidence was insufficient to sustain their convictions.  Defendants primarily take issue with Officer Campbell's credibility and argue that the State failed to prove possession, an element of each offense of which they were convicted.

When a defendant challenges the sufficiency of the evidence, the issue is "'whether, after viewing the evidence in the light most favorable to the prosecution, 
any
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  (Emphasis in original.)  
People v. Cunningham
, 212 Ill. 2d 274, 278 (2004), quoting 
Jackson v. Virginia
, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).  "[W]here the finding of guilt depends on eyewitness testimony, a reviewing court must decide whether, in light of the record, a fact finder could reasonably accept the testimony as true beyond a reasonable doubt."  
Cunningham
, 212 Ill. 2d at 279.  Testimony may be found insufficient under the 
Jackson
 standard "only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt."  
Cunningham
, 212 Ill. 2d at 280.

Defendants argue Officer Campbell's testimony was so inherently unbelievable that there remains a reasonable doubt as to their guilt.  Defendants take issue with several aspects of Campbell's testimony, including that he personally recovered the suspected cocaine and bags from the basement and carried them upstairs to where defendants, despite the noise of the officers' forced entry, were asleep in separate bedrooms.  Defendants also argue Campbell's testimony that both defendants made similar confessions implicating themselves in the crimes, without any memorialization of the statements, was similarly unbelievable.  Defendants additionally assert their guilt is questioned by the testimony of their witnesses establishing that more than 10 people lived in the house on October 5, 2001, and that neither defendant was in either bedroom when the police arrived. 

In 
Cunningham
, 212 Ill. 2d 274, our supreme court recently addressed the issue of witness credibility.  In that case, the defendant was convicted of possession of a controlled substance.  At trial, the State presented testimony of the arresting officer and the stipulated testimony of a forensic chemist to prove the defendant's guilt.  The appellate court reversed the trial court's finding of guilt, concluding that the "'whole scenario as described by [the arresting officer was] *** unworthy of belief.'"  
Cunningham
, 212 Ill. 2d at 278, quoting 
People v. Cunningham
, 333 Ill. App. 3d 1045, 1050 (2002).  Our supreme court reversed the decision of the appellate court, holding that although several aspects of the arresting officer's testimony remained subject to question, there was no proof that his testimony included lies or errors, and the fact finder could reasonably accept his statements as proof beyond a reasonable doubt that he saw the defendant holding a bag that contained cocaine.  
Cunningham
, 212 Ill. 2d at 282-85.

In reaching its conclusion, our supreme court rejected the State's contention that the fact finder's determination of witness credibility is conclusive and reaffirmed that "the fact finder's decision to accept testimony is entitled to great deference but is not conclusive and does not bind the reviewing court."  
Cunningham
, 212 Ill. 2d at 280.  The court also held that "it is for the fact finder to judge how flaws in part of [a witness's] testimony affect the credibility of the whole."  
Cunningham
, 212 Ill. 2d at 283.  The court then discussed several cases, including 
People v. Schott
, 145 Ill. 2d 188 (1991), 
People v. Quintana
, 91 Ill. App. 2d 95 (1968), and 
People v. Coulson
, 13 Ill. 2d 290 (1958), where the reviewing court properly found that flaws in testimony made it impossible for any fact finder to reasonably accept any part of it.  In 
Schott
, the witness contradicted her previous sworn testimony, was an admitted liar, and had motive to falsely accuse the defendant.  In 
Quintana
, the police officer contradicted another State witness and, because he had harassed and threatened the defendant in attempt to persuade him to become a police informant, had motive to fabricate.  In 
Coulson
, the witness's description of the alleged armed robbery "'taxe[d] the gullibility of the credulous.'"  
Cunningham
, 212 Ill. 2d at 284, quoting 
Coulson
, 13 Ill. 2d at 296.

In this case, taking the evidence in the light most favorable to the prosecution, it was reasonable for the trial court to accept Officer Campbell's testimony.  Here, unlike in 
Schott
 or 
Quintana
, the State's witness was not an admitted liar who had motive to accuse defendants.  Unlike in 
Coulson
, in this case we do not believe Campbell's account of the search of defendants' home and defendants' statements concerning the narcotics and gun was so incredible that it taxed the gullibility of the credulous.  

Because we have determined that it was reasonable for the trial court to accept Campbell's testimony, we conclude that the evidence was sufficient to prove that defendants possessed the narcotics in question and that defendant Cross possessed the gun.  Possession is an element of unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2002)), possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2002)), and possession of cannabis with intent to deliver (720 ILCS 550/5(d) (West 2002)).  The State can prove the element of possession by showing either actual possession or constructive possession.  See 
People v. Ray
, 232 Ill. App. 3d 459, 462 (1992).  To prove constructive possession, the State must show that the defendant had knowledge of the presence of the contraband and exercised immediate and exclusive control over the area where the contraband was found.  
People v. McCarter
, 339 Ill. App. 3d 876, 879 (2003).  Mere presence in the vicinity of where the contraband was discovered is insufficient to prove constructive possession.  
Ray
, 232 Ill. App. 3d at 462.  Control over the area where the contraband was found gives rise to an inference that the defendant possessed the contraband.  
McCarter
, 339 Ill. App. 3d at 879.

In this case, defendants lived at 6929 South Justine.  Campbell testified he discovered cocaine in the basement and that he found defendant Cross sleeping in the rear bedroom.  Campbell then discovered $3,647, marijuana and a gun in a clothing basket near the bed.  Campbell also testified that Cross's identification and other belongings were found in that room, and defense witnesses established that that bedroom was where Cross and his family slept.  Campbell also testified that he found defendant Martin sleeping in the left bedroom, where he discovered money and marijuana.  A rabies vaccination tag and other items belonging to Martin were also discovered there.  Campbell also testified that Cross admitted the gun was his and the "narcotics" belonged to both him and defendant Martin, and that Martin stated that the "narcotics" belonged to both him and Cross.  Although defendants' witnesses testified to an entirely different factual scenario, it was for the trial court to resolve that issue.  We therefore conclude the evidence was sufficient to prove defendant Cross guilty of possession of a controlled substance with intent to deliver and unlawful use of a weapon by a felon.  It was also sufficient to prove defendant Martin guilty of possession of a controlled substance with intent to deliver and possession of cannabis with intent to deliver.

Defendant Cross next contends that pursuant to section 5-8-7(b) of the Unified Code of Corrections (730 ILCS 5/5-8-7(b) (West 2002)) (the Code of Corrections), he is entitled to sentencing credit for the time he spent participating in the Cook County Day Reporting Program.  Defendant asserts that under 
People v. Quintana
, 332 Ill. App. 3d 96, 110 (2002), he is entitled to a full day's credit for any part of a day he spent at the day reporting center.  Defendant argues his mittimus should be amended to reflect credit for this time, which he calculates at 432 days.

Section 5-8-7(b) of the Code of Corrections provides in relevant part that a defendant "shall be given credit *** for time spent in custody as a result of the offense for which the sentence was imposed."  730 ILCS 5/5-8-7(b) (West 2002).  Thus, the issue we must decide is whether time spent participating in the day reporting program is "time spent in custody" for purposes of section 5-8-7(b).  As this issue involves statutory interpretation, we apply 
de novo
 review.  
People v. Roberson
, 212 Ill. 2d 430, 437 (2004).   

This exact issue has not been previously addressed.  Defendant relies on 
People v. Campa
, 353 Ill. App. 3d 178 (2004), 
appeal allowed
, No. 99501 (January 26, 2005), which held that a defendant participating in the day reporting program was "in custody" for purposes of the speedy trial statute (725 ILCS 5/103-5 (West 2000)).  The State contends that 
People v. Ramos
, 138 Ill. 2d 152 (1990), which discussed the meaning of "time spent in custody" for purposes of section 5-8-7(b), controls. 

In 
Ramos
, our supreme court held that a period of home confinement following a defendant's release on bond did not constitute "time spent in custody" under section 5-8-7(b) of the Code of Corrections.
(footnote: 1)  The court discussed its previous decisions in 
People ex rel. Morrison v. Sielaff
, 58 Ill. 2d 91 (1974) and 
People v. Scheib
, 76 Ill. 2d 244 (1979), and held that the legislature, in enacting section 5-8-7(b), intended to distinguish between confinement in a penal institution and "'lesser forms of restraint.'"  
Ramos
, 138 Ill. 2d at 158, quoting 
Scheib
, 76 Ill. 2d at 251.  The court found that the purpose of section 5-8-7(b), to "ensure that defendants do not ultimately remain incarcerated for periods in excess of their eventual sentences," was served by granting sentencing credit for time previously spent in institutional custody, but not by granting credit for time spent on bond, even with restrictive conditions.  
Ramos
, 138 Ill. 2d at 159.  The court then concluded that home confinement was not equivalent to institutional confinement because a defendant confined to his home was not subject to the regimentation of penal institutions, enjoyed freedom of association, activity, and movement once inside the home, and did not experience the same surveillance and lack of privacy as an incarcerated defendant.

In 
Campa
, the appellate court held that a defendant participating in the day reporting program was "in custody" for purposes of the speedy trial provision of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5 (West 2000)), which generally requires that a defendant in custody be tried within 120 days.  The court held that because the statute did not define "custody," the legislature must have intended the term to have its ordinary and popularly understood meaning.  Looking to the definition of "custody" in Black's Law Dictionary (Black's Law Dictionary 347 (5
th
 ed. 1979)), the court adopted an elastic definition of the term.  The court found that the defendant was "in custody" because he remained under the control of the sheriff's department, which retained the power to imprison him.  It was the sheriff's department, and not the court, that determined whether the defendant was eligible for day reporting and whether he complied with reporting conditions.    Discussing the case law, the court found that "an individual can be in custody despite enjoying considerable freedom."  
Campa
, 353 Ill. App. 3d at 184.  The court did not address 
Ramos
. 

We reject defendant's reliance on 
Campa
.  That case involved only the Code of Criminal Procedure of 1963 and not the Code of Corrections.  Because this case involves the Code of Corrections, we follow 
Ramos
.  Under that case, we find that participation in the day reporting program falls on the "lesser form of restraint" rather than the "institutional confinement" side of the section 5-8-7(b) divide.  Like the defendant on home confinement in 
Ramos
, defendant Cross in this case was not subject to the same surveillance and lack of privacy as an incarcerated individual.  Further, when defendant was not at the reporting facility, he was not subject to the regimentation of a penal institute and enjoyed many freedoms.  We therefore reject defendant Cross's contention that he is entitled to additional sentencing credit.

The decision of the circuit court of Cook County is therefore affirmed.

Affirmed.

KARNEZIS, P.J., and HOFFMAN, J., concur.

FOOTNOTES
1:
Section 5-8-7(b) was amended effective July 27, 1993 (Pub. Act 88-119, §5, eff. July 27, 1993), to provide for circumstances under which credit for home detention may be given.  730 ILCS 5/5-8-7(b) (West 2002).