FIFTH DIVISION
June 8, 2007

No. 1-05-0045

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| WADE BEACHEM, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | William G. Lacy, |
| | ) | Judge Presiding. |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a bench trial, defendant Wade Beachem was convicted of possession of a controlled substance with intent to deliver and sentenced to six years in the Illinois state penitentiary. The trial court also ordered defendant to pay $3,704. On appeal, defendant claims that his conviction of possession of a controlled substance with intent to deliver should be reduced to simple possession of a controlled substance because the State did not prove that he had the requisite intent to deliver. Defendant also contends that he should be credited, against his sentence, for time served in the Cook County Sheriff's Day Reporting Center Program (Day Reporting Center) prior to sentencing. Defendant raises three contentions concerning the order to pay $3,704: (1) he was denied due process when he was ordered to pay a $5 fee for deposit in the Spinal Cord Injury Paralysis Cure Research Trust Fund; (2) that he is entitled to apply a $5-per-

day credit for incarceration to the $3,000 controlled substance assessment; and (3) that the trial court improperly imposed a $20 fine for deposit in the Violent Crime Victims Assistance Fund. Lastly, the defendant contends that the extraction of his blood and perpetual storing of his DNA profile pursuant to section 5-4-3 of the Unified Code of Corrections (730 ILCS 5/5-4-3 (West 2004)) violates his fourth amendment right to be free from unreasonable searches and seizures.

BACKGROUND

At trial, Officer Albert Powe testified that on the evening of March 3, 2004, he and his partner, Officer Hawkins, executed a search warrant for defendant Wade Beachem at 3550 S. Rhodes Avenue, Apartment 607, Chicago. When the two officers stepped off the elevator of the sixth floor, they observed as defendant opened the front door of apartment 607. Officers Powe and Hawkins identified themselves as Chicago police officers and informed defendant that they had a search warrant for the apartment. When they walked inside, two other adults and two children were seated in the living room. The officers told those present in the apartment that they had a search warrant to search the apartment, provided a copy of the warrant, and read defendant his *Miranda* rights. After reading defendant his *Miranda* rights, Officer Powe asked defendant if he wanted to tell the officers about anything in the apartment. Defendant at that point declined to make any statements.

During the search, the officers recovered two plastic bags containing a white, rocky substance from the pocket of a jacket hanging in the rear bedroom closet. The officers transported defendant to the second district police station. At the station, Officer Powe read defendant his *Miranda* rights. After receiving his *Miranda* rights, defendant stated that he sold

2

drugs to support his family.

The parties stipulated that Charlotte Corbitt, a forensic chemist with the Illinois State Police crime lab, would have testified that the plastic bags weighed 23.9 grams total, and that the bags tested positive for the presence of cocaine. The parties further stipulated that a proper chain of custody was maintained at all times. The officers also found an unopened ComEd utility bill from January 2004 addressed to defendant at the 3550 S. Rhodes address.

The trial court found defendant guilty of possession of a controlled substance with intent to deliver, sentenced defendant to a minimum of six years in prison, and ordered defendant to pay $3,704 in "costs and fees." This appeal followed.

ANALYSIS

On appeal, defendant challenges his conviction for possession of a controlled substance with intent to deliver, the calculation of his term of imprisonment, various fines and fees imposed against him, and contends that the extraction of his blood and perpetual storing of his DNA profile violates his fourth amendment right to be free from unreasonable searches and seizures.

I. Possession of a Controlled Substance with Intent to Deliver

Defendant contends that his conviction of possession of a controlled substance with intent to deliver should be reduced to simple possession of a controlled substance because the State did not prove that he had the requisite intent to deliver. The three elements of the crime of unlawful possession of narcotics with intent to deliver are: (1) the defendant had knowledge of the presence of the narcotics, (2) the narcotics were in the immediate possession or control of the defendant, and (3) the defendant intended to deliver the narcotics. *People v. Pintos*, 133 Ill. 2d

3

286, 291 (1989). On appeal, defendant contends that the State did not prove the third element beyond a reasonable doubt - that he intended to deliver the narcotics.

In addressing the sufficiency of the evidence, it is not the court's role to reweigh the evidence. *People v. Hendricks*, 325 Ill. App. 3d 1097, 1110 (2001). Rather, the issue to be resolved is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have concluded beyond a reasonable doubt that the defendant intended to deliver the cocaine. *People v. Robinson*, 167 Ill. 2d 397, 407 (1995).

Since direct evidence of intent to deliver is rare, intent to deliver is frequently proven with circumstantial evidence. *Robinson*, 167 Ill. 2d at 408. Illinois courts have considered several different factors probative of intent to deliver.

> "Such factors include whether the quantity of controlled substance in defendant's possession is too large to be viewed as being for personal consumption (*People v. Berry* (1990), 198 Ill. App. 3d 24), the high purity of the drug confiscated (*People v. Torres* (1990), 200 Ill. App. 3d 253), the possession of weapons (*People v. Dockery* (1993), 248 Ill. App. 3d 59), the possession of large amounts of cash (*People v. Jones* (1991), 215 Ill. App. 3d 652), the possession of police scanners, beepers or cellular telephones (*People v. LeCour* (1988), 172 Ill. App. 3d 878), *People v. Bradford* (1993), 239 Ill. App. 3d 796), the possession of drug paraphernalia (*People v. McDonald* (1992), 227 Ill. App. 3d 92)

and the manner in which the substance is packaged (*People v.*

*Banks* (1992), 227 Ill. App. 3d 950)." *Robinson*, 167 Ill. 2d at 408.

In the instant case, the officers confiscated two plastic bags from defendant's jacket that contained 23.9 grams of cocaine in total. Although Illinois courts have on occasion found amounts of cocaine in excess of 23.9 grams to be consistent with personal consumption, supporting only a conviction of simple possession, Illinois courts have also convicted defendants of possession of a controlled substance with intent to deliver with less than 23.9 grams of cocaine when other evidence is present. *Hendricks*, 325 Ill. App. 3d at 1114 (court reversed defendant's conviction of possession of a controlled substance with intent to deliver and remanded case for trial on possession of a controlled substance where the State could not prove that defendant had the requisite intent to deliver 27.81 grams of cocaine); *People v. Little*, 322 Ill. App. 3d 607, 620 (2001) (court found that 1.5 grams of cocaine was sufficient to find defendant had the requisite intent to deliver where officers witnessed defendant exchange a small object for money).

As the Illinois Supreme Court stated in *Robinson*, where the quantity of narcotics "in the defendant's possession decreases, the need for additional circumstantial evidence of intent to deliver to support a conviction increases." *Robinson*, 167 Ill. 2d at 413. Although the quantity of a controlled substance alone can be sufficient to prove an intent to deliver, here, the State does not argue that the amount of cocaine, standing alone, was sufficient to support a conviction of possession with intent to deliver. See *Robinson*, 167 Ill. 2d at 410-11. Rather, the State contends that the amount of cocaine and the defendant's own admission to Officer Powe, that he sold drugs in order to take care of his family, support the trial court's conviction of defendant for

possession with intent to deliver.

We are mindful that in addressing the question of the sufficiency of the evidence we are not to reweigh the evidence. Based on the large amount of cocaine and the defendant's statement, we find that when all of the evidence is viewed as a whole and in a light most favorable to the State, that a rationale trier of fact could have concluded beyond reasonable doubt that the defendant intended to deliver the narcotics in his possession.

## II. Calculation of Term of Imprisonment

Defendant contends that his mittimus should be amended to reflect credit for 7 days that he spent in full custody prior to his bench trial, 26 days in full custody between his guilty finding and his sentencing, and 258 days during which he was subject to the restrictions of the sheriff's Day Reporting Center pursuant to section 5-8-7 of the Unified Code of Corrections (730 ILCS 5/5-8-7 (West 2004)). Alternatively, the defendant argues that if the court does not find that he is entitled to credit for 258 days then he is at least entitled to credit for the 171 days during which he actually spent time in custody at Cook County Jail for several hours while participating in the sheriff's Day Reporting Center program. Since this is purely a legal issue and there are not disputed facts, it will be reviewed *de novo*. *People v. Dinelli*, 217 Ill. 2d 387, 397 (2005).

Defendant spent 7 days in full custody prior to his bench trial, 26 days in full custody between his guilty finding and sentencing, and 258 days as a participant in the Day Reporting Center. Of the 258 days in the Day Reporting Center, defendant spent time in custody at Cook County Jail for several hours on 171 of those days. However, the mittimus only reflects 26 days of sentencing credit for the time he spent in full custody between defendant being found guilty

1-05-0045

and his sentencing.

Section 5-8-7 of the Unified Code of Corrections provides, in relevant part, as follows:

"(a) A sentence of imprisonment shall commence on the date on which the offender is received by the Department or the institution at which the sentence is to be served.

(b) The offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed, at the rate specified in Section 3-6-3 of this Code [730 ILCS 5/3-6-3 (West 2004)]. Except when prohibited by subsection (d), the trial court may give credit to the defendant for time spent in home detention, or when the defendant has been confined for psychiatric or substance abuse treatment prior to judgment, if the court finds that the detention or confinement was custodial." 730 ILCS 5/5-8-7(a), (b) (West 2004).

In the instant case, the State and defendant agree that the mittimus should be amended to reflect an additional credit of seven days for the days defendant spent in full custody prior to trial. Accordingly, we order the mittimus to be amended to reflect an additional seven-day credit, pursuant to section 5-8-7.

The second issue we must decide is whether time spent in the Day Reporting Center is

7

"time spent in custody," as contemplated by section 5-8-7. The defendant contends he was entitled to sentencing credit for the time he spent in the Day Reporting Center. The State opposes that credit. In *People v. Martin*, the court held that the defendant was not entitled to a sentencing credit, pursuant to section 5-8-7, for the time he spent participating in the Day Reporting Center. *People v. Martin*, 357 Ill. App. 3d 663 (2005). *Martin*'s holding was, in part, based on *People v. Ramos*, 138 Ill. 2d 152 (1990). In *Ramos*, the Illinois Supreme Court held that the "defendant's period of home confinement [while released on bond] was not 'time spent in custody' within the meaning of the statute." *Ramos*, 138 Ill. 2d at 159. *Martin* rejected our analysis in *People v. Campa*, 353 Ill. App. 3d 178 (2004), which held that a defendant participating in the Day Reporting Center was "in custody" for purposes of the speedy-trial statute (725 ILCS 5/103-5 (West 2000)). Since the decision in *Martin* was filed, the Illinois Supreme Court affirmed *People v. Campa*, 217 Ill. 2d 243 (2005).

The State does not rely on *Martin*, but references *Ramos* and *People ex rel. Morrison v. Sielaff*, 58 Ill. 2d 91 (1974), and notes that "the Illinois Supreme Court in *People v. Campa*, 217 Ill. 2d 243 (2005), has recently disposed of this issue." We find *Campa*, however, does not support the State's opposition to the defendant receiving sentencing credit for his participation in the Day Reporting Center. The Illinois Supreme Court in *Campa* found both *Ramos* and *Morrison* inapposite, explaining as follows:

> "We decline the State's invitation to apply the reasoning of
>
> *Morrison* and *Ramos* in the present context. Both *Morrison* and
>
> *Ramos* involved a defendant who was admitted to bond. This is a

distinction of note since, hereinafter, we hold that defendant was not on bail or recognizance while participating in the Day Reporting Center program. Further, both *Morrison* and *Ramos* involved the meaning of the term 'custody' as used in the credit-against-sentence provision of the Unified Code of Corrections. The court carefully limited the opinions to the context of the Unified Code of Corrections. See *Morrison*, 58 Ill. 2d at 93-94; *Ramos*, 138 Ill. 2d at 158-62." *Campa*, 217 Ill. 2d. at 261.

The court in *Campa* held that as a participant in the Day Reporting Center, the defendant was in the "custody" of the Cook County Department of Corrections. *Campa*, 217 Ill. 2d at 254. In the context of the speedy-trial statute, the Illinois Supreme Court affirmed the appellate court's reversal and discharge because the defendant was in custody and he was not tried within 120 days. *Campa*, 217 Ill. 2d at 270.

The Illinois Supreme Court in *Campa* reviewed the meaning of the term "custody" as it is used in the speedy-trial statute section 103-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5 (West 2004)). In the instant case, we are asked to review the meaning of the term "custody" as it is used in the sentencing credit provision, section 5-8-7(b) of the Unified Code of Corrections (730 ILCS 5/5-8-7(b) (West 2004)). Mindful of this difference, we nevertheless find the analysis used by the Illinois Supreme Court in *Campa* instructive. We first examine the status of the defendant in the instant case and then look at the nature of his participation in the Day Reporting Center.

The defendant in *Morrison* was on home confinement and the defendant in *Ramos* was on bail; neither defendant was participating in the sheriff's Day Reporting Center. However, like the defendant in *Campa*, the defendant in the instant case was in the sheriff's Day Reporting Center program. In the instant case, defendant, while participating in the Day Reporting Center, remained in the custody of the sheriff's department.

We are mindful that the conditions of the Day Reporting Center are not as onerous as the conditions of confinement in a correctional institution. As recognized by the Illinois Supreme Court in *Campa*:

> "The basic concept of the Day Reporting Center program is to acclimate the participant to the daily routine of reporting to a strictly supervised environment, where he is expected to adhere to a schedule and engage in productive activities. Every participant in the program is subject to mandatory daily attendance and drug testing." *Campa*, 217 Ill. 2d 254-55.

We further note that the sheriff retains control over each participant in the program from Monday through Friday for up to nine hours, from 7 a.m. to 4 p.m., with the exception of county holidays. A participant's attendance is not satisfied by merely checking in at the center. Rather, participants must be present in the "strictly supervised environment" for three to nine hours daily. See *Day Reporting Center*, Cook County Sheriff's Office D.C.S.I., *available at* http://ww.cookcountysheriff.org/dcsi/day.html (last visited May 7, 2007).

A defendant can be in "custody" as the result of the conditions imposed by a detaining authority such as the constraints imposed on defendant's liberty by the sheriff's Day Reporting Center program. See *Campa*, 217 Ill. 2d at 254-55. Based on the totality of the circumstances, including the fact that defendant was in the custody of the sheriff, and taking into consideration the nature and purpose of the Day Reporting Center, we conclude defendant was in "custody" as the term is used in the sentencing credit provision of the Unified Code of Corrections (730 ILCS 5/5-8-7(b) (West 2004)). Accordingly, defendant is entitled to credit against his sentence for all "time spent in custody as a result of the offense for which the sentence was imposed." 730 ILCS 5/5-8-7(b) (West 2004).

We are mindful that when a defendant is held in custody for any part of a day he is entitled to credit against his sentence for all of that day. *People v. Quintana*, 332 Ill. App. 3d 96, 110 (2002). However, we are not prepared to give defendant credit for 258 days for the entire period during which he was potentially subject to the restrictions of the sheriff's Day Reporting Center program. Consistent with case law and the intent of the sentencing-credit statute, we give defendant credit for each day during which he in fact reported to the sheriff's Day Reporting Center and actually spent time in custody at Cook County Jail for several hours. *Quintana*, 332 Ill. App. 3d at 110; *People v. Donnelly*, 226 Ill. App. 3d 771, 779 (1992) (defendant held in custody for any part of a day is entitled to credit against his sentence for all of that day). The record reflects that during the 258 days defendant was in the custody of the sheriff as a participant in the sheriff's Day Reporting Center program, he in fact spent time in custody in Cook County jail for several hours on 171 of those 258 days, excluding weekends, holidays and

excused court dates. Accordingly, defendant is to receive credit for the 171 days during which he in fact spent time in custody at the Cook County jail as a participant in the sheriff's Day Reporting Center program.

For the reasons previously discussed, defendant is entitled to credit for a total of 204 days. The total of 204 days' sentencing credit reflects credit for 7 days in full custody prior to defendant's bench trial, 26 days in full custody between his guilty finding and his sentencing, and 171 days' credit for actual time spent in custody at the Cook County jail as a participant in the sheriff's Day Reporting Center program. The mittimus should be corrected to reflect the total credit of 204 days.

### III. Spinal Cord Fund Fee

Defendant contends that he was denied due process when he was ordered to pay a $5 fee for deposit in the Spinal Cord Injury Paralysis Cure Research Trust Fund (Spinal Cord Fund) pursuant to section 5-9-1.1 of the Unified Code of Corrections (730 ILCS 5/5-9-1.1 (West 2004)). Defendant argues that there is no reasonable relationship between his conviction for possession of a controlled substance with intent to deliver and the public interest in funding spinal cord research. We review the constitutionality of statutes *de novo*. *People v. Dinelli*, 217 Ill. 2d 387, 397 (2005).

Section 5-9-1.1 provides, in relevant part, as follows:

> "(a) When a person has been adjudged guilty of a drug
> related offense involving possession or delivery of cannabis or
> possession or delivery of a controlled substance as defined in the

Cannabis Control Act, as amended, or the Illinois Controlled

Substances Act, as amended, in addition to any other penalty

imposed, a fine shall be levied by the court at not less than the full

street value of the cannabis or controlled substances seized.

* * *

(c) In addition to any penalty imposed under subsection (a)

of this Section, a fee of $5 shall be assessed by the court, the

proceeds of which shall be controlled by the Circuit Clerk and

remitted to the State Treasurer under Section 27.6 of the Clerks of

Courts Act for deposit into the Spinal Cord Injury Paralysis Cure

Research Trust Fund. This additional fee of $5 shall not be

considered a part of the fine for purposes of any reduction in the

fine for time served either before or after sentencing." 730 ILCS

5/5-9-1.1(a), (c) (West 2004).

The Illinois Supreme Court recently upheld the constitutionality of the $5 charge, finding

that the "fee" is a fine, its purpose is punitive, and it is not grossly disproportionate to the offense

of possession of a controlled substance. *People v. Jones*, 223 Ill. 2d 569, 605 (2006). In

accordance with *Jones*, we uphold the subject $5 charge.

IV. Credit for Incarceration

Defendant contends that under section 110-14 of the Code of Criminal Procedure of 1963

(725 ILCS 5/110-14 (West 2004)), he is entitled to apply a $5-per-day credit for incarceration on

a bailable offense to the $3,000 controlled substance assessment. The State asserts that the $5 credit is applicable only to "fines," that the charges identified by defendant were not "fines," and that, therefore, the credit should not apply. Since this is purely a legal issue and there are not disputed facts, it will be reviewed *de novo*. *People v. Dinelli*, 217 Ill. 2d 387, 397 (2005).

Section 110-14 of the Code of Criminal Procedure of 1963 provides, in relevant part, as follows:

> "Any person incarcerated on a bailable offense who does not
> supply bail and against whom a fine is levied on conviction of such
> offense shall be allowed a credit of $5 for each day so incarcerated
> upon application of the defendant. However, in no case shall the
> amount so allowed or credited exceed the amount of the fine." 725
> ILCS 5/110-14 (West 2004).

"The plain language of this statute indicates that the credit applies only to 'fines' that are imposed pursuant to a conviction, not to any other court costs or fees." *People v. Tolliver*, 363 Ill. App. 3d 94, 96 (2006). " '[A] "fine" is a pecuniary punishment imposed as part of a criminal sentence.' " *Tolliver*, 363 Ill. App. 3d at 97, quoting *People v. Bishop*, 354 Ill. App. 3d 549, 562 (2004). In contrast, a "fee" is a charge for labor or services that is compensatory in nature. *Tolliver*, 363 Ill. App. 3d at 97, citing *Bishop*, 354 Ill. App. 3d at 562.

In order to determine whether the credit, pursuant to section 110-14, applies to the $3,000 controlled substance assessment, we must first determine whether the respective assessment is a "fine." Pursuant to section 411.2 of the Illinois Controlled Substances Act, defendant was

ordered to pay a $3,000 controlled substance assessment. 720 ILCS 570/411.2 (West 2004).

Section 411.2 provides as follows:

"(a) Every person convicted of a violation of this Act, and

every person placed on probation, conditional discharge,

supervision or probation under Section 410 of this Act, shall be

assessed for each offense a sum fixed at:

(1) $ 3,000 for a Class X felony[.]"  720 ILCS 570/4

11.2(a)(1) (West 2004).

In prior cases involving this issue, we have consistently held that assessments, pursuant to

section 411.2, are fines for which defendants are entitled to apply the $5 per-day credit. See, *e.g.*,

*People v. Youngblood*, 365 Ill. App. 3d 210 (2006); *People v. McNeal*, 364 Ill. App. 3d 867

(2006); *People v. Fort*, 362 Ill. App. 3d 1, 5-6 (2005); *People v. Haycraft*, 349 Ill. App. 3d 416,

430 (2004); *People v. Littlejohn*, 338 Ill. App. 3d 281, 284 (2003); *People v. Gathing*, 334 Ill.

App. 3d 617, 620 (2002); *People v. Rodriguez*, 276 Ill. App. 3d 33, 41 (1995); *People v. Otero*,

263 Ill. App. 3d 282, 287 (1994); *People v. Reed*, 255 Ill. App. 3d 949, 951 (1994); *People v.*

*Brown*, 242 Ill. App. 3d 465, 466 (1993). We decline to depart from this line of cases. *People v.*

*Fort*, No. 1-04-1937, slip op. at 9-10 (May 29, 2007).

Moreover, the Illinois Supreme Court in *Jones* has recognized that the drug assessment is

"subject to reduction by credit for presentencing incarceration pursuant to section 110-14(a) of

the Code of Criminal Procedure (725 ILCS 5/110-14(a) (West 2004))." *Jones*, 223 Ill. 2d at 592.

Accordingly, we find that a $5-per-day credit may be applied to defendant's $3,000 controlled

substance assessment.

For the reasons previously discussed, defendant is entitled to credit for 204 days of presentencing incarceration at $5-per-day for a total of $1,020 to be credited against his $3,000 controlled substance assessment. Accordingly, we amend the costs and fees order to reflect a total of $1,020 based on the 204 days of credit at $5 per day against the $3,000 controlled substance assessment.

V. Violent Crime Victims Assistance Fund

Defendant contends that $20 for the Violent Crime Victims Assistance Fund was erroneously assessed to him because the penalty may be applied only where "no other fine is imposed." The $20 penalty was assessed pursuant to section 10(c)(2) of the Violent Crime Victims Assistance Act, which provides as follows:

> "(c) When any person is convicted in Illinois on or after
>
> August 28, 1986, of an offense listed below, or placed on
>
> supervision for such an offense on or after September 18, 1986, and
>
> no other fine is imposed, the following penalty shall be collected by
>
> the Circuit Court Clerk:
>
> ***
>
> (2) $20, for any other felony or misdemeanor,
>
> excluding any conservation offense." 725 ILCS 240/10 (c)
>
> (2) (West 2004).

Under the plain language of the statute, a $20 penalty may be ordered only if no other fines have been imposed. In the instant case, we have already determined that another fine was imposed upon the defendant in the form of the $3,000 controlled substance assessment. The Act does not apply to defendant under its own plain language. Therefore, the trial court acted improperly when it imposed a $20 Violent Crime Victims Assistance Fund penalty in this case. We strike the penalty from the order.

## VI. Constitutionality of DNA Statute

Finally, defendant contends that the extraction of his blood and perpetual storing of his DNA profile pursuant to section 5-4-3 of the Unified Code of Corrections (730 ILCS 5/5-4-3 (West 2004)) violates his fourth amendment right to be free from unreasonable searches and seizures and asks this court to find the statute unconstitutional. We review the constitutionality of statutes *de novo*. *People v. Dinelli*, 217 Ill. 2d 387, 397 (2005).

We affirm the constitutionality of the statute authorizing the extraction and storing of DNA based on the Illinois Supreme Court's holding in *People v. Garvin*, 219 Ill. 2d 104 (2006). We note in *Garvin*, the defendant, similar to the instant case, argued that the State's interest in the blood sample and DNA did not outweigh his privacy interest, "even in light of his felony conviction." *Garvin*, 219 Ill. 2d at 123. The supreme court recognized that a convicted felon's privacy rights are "substantially reduced due to his status as a convicted felon." *Garvin*, 219 Ill. 2d at 124. The supreme court found "the State's interest in effective crime investigations and prevention, as advanced by section 5-4-3, outweighs defendant's privacy interest as a convicted felon." *Garvin*, 219 Ill. 2d at 125. In conclusion, the supreme court rejected the defendant's

17

constitutional challenge as follows:

> "We also hold that the DNA sampling and database mandated by section 5-4-3 is constitutional both as applied in defendant's case and on its face." *Garvin*, 219 Ill. 2d at 125.

Following the principles articulated in *Garvin*, we uphold section 5-4-3 as constitutional on its face and as applied to defendant. We reject defendant's argument. The order of the circuit court regarding the extraction and storing of defendant's DNA is affirmed.

CONCLUSION

For the reasons previously discussed, we rule as follows: (1) affirm defendant's conviction of possession of a controlled substance with intent to deliver; (2) affirm the $5 payment to the Spinal Cord Injury Paralysis Cure Research Trust Fund; (3) amend the mittimus to reflect a total of 204 days' credit, pursuant to section 5-8-7; (4) amend the Costs and Fees order to reflect a total of $1,020 to be credited against the $3,000 controlled substance assessment; (5) strike from the order the $20 Violent Crime Victims Assistance Fund penalty; and (6) affirm the trial court's order regarding the extraction and storing of defendant's DNA.

Affirmed as modified.

O'BRIEN, P.J., and GALLAGHER, J., concur.